Herbert BURGESS, Plaintiff,

v.

Sgt. Gary P. MORSE, et al., Defendants.

No. 01–CV–6578L.

United States District Court, W.D. New York.

April 23, 2003.

Herbert Burgess, Dannemora, NY, Pro se.

Emil J. Bove, Office of New York State Attorney General, for Defendants.

## *DECISION AND ORDER*

LARIMER, District Judge.

### INTRODUCTION

Plaintiff, Herbert Burgess ("plaintiff"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS") and previously incarcerated at Southport Correctional Facility ("Southport"), brought this action against Sergeant Gary Morse, Southport Superintendent Michael McGinnis, and Commissioner of DOCS Glenn S. Goord, pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights. Plaintiff claims that Sergeant Morse identified him as a snitch to other inmates and that he and Superintendent McGinnis thereafter failed to protect him. Plaintiff also claims that Commissioner Goord improperly denied his request to be transferred into the Federal Bureau of Prisons. Plaintiff seeks punitive and compensatory damages.[1]

Defendants have moved for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to commencing suit, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), and the Supreme Court's decision in *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Defendants also move for summary judgment seeking to dismiss plaintiff's claims brought against them in their official capacities. Defendant Goord further moves for summary judgment on the ground that he had no personal in-

---

1. In his complaint, plaintiff also sought injunctive relief, requesting to be moved to a different correctional facility, or into the custody of the Federal Bureau of Prisons. This Court denied as moot plaintiff's motion for a temporary restraining order because plaintiff was transferred from Southport to Clinton Correctional Facility on March 4, 2002. *See* Dkt. # 15.

volvement in the alleged violation of plaintiff's constitutional rights.

Plaintiff argues that he sufficiently exhausted his administrative remedies through formal and informal channels. Plaintiff further argues that Commissioner Goord is not entitled to summary judgment because he personally knew about the constitutional violations through a series of letters plaintiff sent to him requesting that he be transferred from Southport.

For the reasons that follow, defendants' motion for summary judgment is granted. Plaintiff's claims against defendants in their official capacities are dismissed because no such liability exists under § 1983. Plaintiff's claims against defendants Morse and McGinnis are dismissed without prejudice because plaintiff failed to exhaust all available administrative remedies prior to filing suit in federal court. Lastly, defendant Goord's motion for summary judgment is granted because Goord lacked the requisite personal involvement in the alleged unconstitutional violation, and did not deliberately disregard a substantial risk of harm to plaintiff.

## FACTS

Construed in a light most favorable to the plaintiff, the following facts are taken from the complaint and various pleadings filed to date in this case. In July and August of 2001, plaintiff sent a lengthy ten-page letter to both United States Congressman Charles B. Rangel and Commissioner Goord. In it, plaintiff described "the many incidents" during which he allegedly had been assaulted, "including

raped, robbed, and extorted," by other inmates at no fewer than ten different DOCS facilities where he had been incarcerated since 1993. Plaintiff requested that he be placed "somewhere safe," and suggested either the Assessment and Program Preparation Unit at Clinton Correctional Facility or a transfer into the Federal Bureau of Prisons. Congressmen Rangel sent Commissioner Goord a letter requesting the Goord investigate plaintiff's allegations. Dkt. # 36, Exs. A, C, and D.

Commissioner Goord responded to Rangel that DOCS policy is "not to process routine inmate requests for transfer either into or out of this State's correctional system." Further, Goord explained that DOCS had investigated plaintiff's allegations as they had been made and had "taken necessary measures when warranted." *Id.* at Ex. B. On August 20, 2001, Deputy Commissioner Lucien Leclaire, to whom Commissioner Goord had referred plaintiff's letter, wrote to plaintiff and instructed him to address issues concerning his personal safety with facility officials and to discuss transfer options with his correction counselor. Dkt. # 36, Ex. E.

At the time of his complaint to Goord, plaintiff was housed in cellblock D of Southport, a special housing unit where inmates remain in their cells alone all day, with the exception of an optional one-hour of exercise time.[2] The record does not show that plaintiff took any steps at the facility level to address his safety concerns or his desire to be transferred, and plaintiff makes no allegations that he did so

---

**2.** The record shows that plaintiff was housed in the D cellblock from February 4, 2001 through August 23, 2001, and then again from September 27, 2001 until March 1, 2002. According to William Wilcox, a Correction Captain at Southport, plaintiff was incarcerated in this unit because he was under investigation for engaging in mail fraud from prison by filing a series of false tax returns in several states. Dkt. # 12, ¶¶ 8–10. In September 2001, plaintiff pleaded guilty to twenty-three counts of mail fraud, and was sentenced to a consecutive term of eighteen months and ordered to pay $3,416.00 in restitution. *Id.* at Ex. E.

until later in the fall of 2001, after an incident with another inmate.

On October 18, 2001, inmate Pickens attempted to extort plaintiff by threatening him and his family with physical harm. Pickens had obtained plaintiff's father's address and was threatening to use his gang connections to cause his father harm unless plaintiff paid a relative of Pickens $50.00. At first, plaintiff complied and requested that Inmate Accounts process a disbursement to Cynthia Pickens in Albany. Dkt. # 12, Ex. G. However, on October 22, plaintiff cancelled the disbursement request and complained to prison officials that he was being extorted. Specifically, plaintiff wrote a letter to Sgt. Morse about the incident and expressed fear for his own and his father's safety. Plaintiff requested that he be moved away from Pickens and that his family be protected. Dkt. # 12, Ex. I.

Sgt. Morse investigated plaintiff's claims and, on October 29, 2001, issued a misbehavior report to Pickens. Dkt. # 12, Ex. J. The portion of the misbehavior report that was sent to Pickens did not identify plaintiff by name as the complaining party. However, that fact could easily be discerned based on the allegations in the report that detailed the alleged extortion of an inmate through threats of physical harm to him and his family. *See id.*

On October 30 and 31, 2001, plaintiff wrote letters to his correction counselor requesting assistance because of his fear that Pickens would assault him in retaliation for his lodging the extortion complaint. Plaintiff also claimed that several inmates, including an inmate by the name of Evans, had threatened him with death and other assault for being "a snitch." Dkt. # 12, Exs. K and L.

At the time of the incident, plaintiff was housed in a cell across from Pickens. Dkt. # 12, Exs. D and L. However, on October 31, plaintiff was moved away from Pickens and housed in different gallery on the D Block. Plaintiff thereafter refused to testify against Pickens at the misbehavior hearing on the alleged extortion. The record does not show whether Pickens was found guilty at that hearing. On November 9, 2001, the day the hearing closed, plaintiff was again transferred to another cell in a third gallery on the D Block, and orders were issued that he take recreation alone with the adjoining recreation pen empty. Dkt. # 12, ¶ 19.[3]

On December 6, 2001, plaintiff filed this complaint alleging that Sgt. Morse identified him as a snitch to Pickens and failed to take steps to protect him. As a result, he claimed that on October 29, 2001, another inmate assaulted him in the recreation yard "with spit" and "sharp objects." Plaintiff also claimed that he was forced to stay in his cell all day for fear of his safety. Plaintiff also informed Superintendent McGinnis on October 21, 22, 28, and 29, and November 5, 2001, of his concern for his safety, and of what plaintiff believed to be improper conduct by Sgt. Morse. Plaintiff alleged that McGinnis failed to take any corrective action, despite the fact that plaintiff's life was in danger. Plaintiff also asserted that Commissioner Goord improperly denied his request to be transferred into the Federal Bureau of Prisons.

On December 12 or 13, 2001, after filing his complaint, plaintiff again wrote to Commissioner Goord that he had become

3. A copy of plaintiff's internal movement history display shows that he was housed in cell D-01-006 until October 31. This cell was across from Pickens's cell, D-01-005. On October 31, plaintiff was moved to cell D-02- 009, and then to D-03-006 on November 9, where he remained until he was transferred to Clinton Correctional Facility in March of 2002. Dkt. # 12, Ex. D.

the victim of "constant harassment by employees" at Southport and that his safety was in danger because of the actions of Sgt. Morse. Plaintiff detailed the allegations regarding inmate Pickens's attempt to extort money from him, the subsequent misbehavior report, and the alleged assault by another inmate. Plaintiff claimed that he was "threatened by virtually everyone in the cellblock and also attacked in the recreation yard." Dkt. # 20, Ex. A.[4]

On January 21, 2002, plaintiff sent another letter to Goord alleging that Sgt. Morse labeled him a snitch to yet another inmate by the name of DePallo, and that he had been attacked again in the exercise yard. Dkt. # 20, Ex. C. On January 25, 2002, at Commissioner's Goord's request, Deputy Commissioner Leclaire responded to plaintiff's letters. In a letter to plaintiff, Leclaire explained that Superintendent McGinnis had investigated plaintiff's allegations and determined that plaintiff had been involved in an incident in which he refused to testify on his own behalf against the other inmate, that the facility administration had taken the necessary steps and move him to another cell, and had effected a separation between him and the other inmate. Leclaire further stated that there was no evidence to substantiate any wrongdoing by the Supervisor investigating the incident. Leclaire also told plaintiff that he needed to address any further concerns "at the facility level for immediate review and necessary action before seeking redress from this office." Dkt. # 20, Ex. D.

In March 2002, plaintiff was transferred out of Southport to Clinton Correctional Facility.

**4.** The letter to Goord also contains allegations regarding other conditions of confinement

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000) (quotations omitted). Where, as here, the plaintiff is proceeding *pro se*, the court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999) (quotations omitted). "Nonetheless, '[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment.'" *Rodriguez v. Ames*, 224 F.Supp.2d 555, 559 (W.D.N.Y.2002), *quoting Rodriguez v. Hahn*, 209 F.Supp.2d 344, 348 (S.D.N.Y.2002).

### II. Official Capacity Suits Under § 1983

■ Initially, the Court dismisses plaintiff's claims under § 1983 for money damages brought against defendants in their "official capacities" because the doctrine of sovereign immunity bars such claims. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476 (2d Cir.2002); *Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir.1996).[5]

which are not set forth here because they are not relevant to this lawsuit.

**5.** To the extent plaintiff also seeks injunctive

## III. Failure to Exhaust Administrative Remedies

Turning to defendants' principal argument, the PRLA provides at 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [6] In New York State, those remedies consist of a three-step review process. First, "an inmate must submit a complaint to the Grievance Clerk within 14 calendar days of an alleged occurrence ...." 7 N.Y.C.R.R. § 701.7(a)(1). The grievance is then submitted to the inmate grievance resolution committee ("IGRC") for investigation and review. The IGRC's decision can be appealed to the superintendent of the facility, and the superintendent's decision can be appealed to the Central Office Review Committee ("CORC"), which makes the final administrative determination. *See* 7 N.Y.C.R.R. § 701.7. At each step, there are time limits within which the grievance or appeal must be decided, and "matters not decided within the time limits [prescribed by the regulations] may be appealed to the next step." 7 N.Y.C.R.R. § 701.8. Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to 42 U.S.C. § 1983 in federal court. *Santos v. Hauck*, 242 F.Supp.2d 257 (W.D.N.Y.2003).

There is an alternative procedure available to an inmate who, like plaintiff, claims that he was harassed by correctional officers. *See* 7 N.Y.C.R.R. § 701.11. The inmate "should first report such occurrences to the immediate supervisor of [those] employee[s]." 7 N.Y.C.R.R. § 701.11(b)(1). The inmate's complaint must be given a grievance number and recorded in sequence. 7 N.Y.C.R.R. § 701.11(b)(2). Thereafter, the Superintendent must determine whether, if true, the grievance would represent a bona fide case of harassment. 7 N.Y.C.R.R. § 701.11(b)(3). If the Superintendent determines that the grievance does not represent a bona fide case of harassment, then the grievance is submitted to the IGRC for resolution in conformance with the usual IGP procedure found in Section 701.7, outlined above. *Id.* Irrespective of his finding, the Superintendent must respond to the grievance within twelve days of its receipt. 7 N.Y.C.R.R. § 701.11(b)(5). If the Superintendent fails

---

relief, those claims against the defendants in their official capacity are not barred by sovereign immunity. *See Will*, 491 U.S. at 71 n. 10, 109 S.Ct. 2304, *quoting Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' "). Nonetheless, as set forth below, these claims are dismissed for other reasons.

6. Prior to the Supreme Court's decision in *Porter v. Nussle*, the law in the Second Circuit was that the PLRA's exhaustion requirement did not apply to claims pertaining to isolated incidents affecting particular inmates. *See*

*Nussle v. Willette*, 224 F.3d 95 (2d Cir.2000). In *Nussle*, however, the Supreme Court held that " § 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Nussle*, 534 U.S. at 520, 122 S.Ct. 983.

Plaintiff argues that the Court should not apply *Nussle* retroactively because his action was filed before the Supreme Court's decision. However, this Court and many others in the circuit have repeatedly rejected this same argument and held that claims filed prior to the Court's decision in *Nussle* must meet the exhaustion requirements. *See Labounty v. Johnson*, No. 99–CV–6353, 2003 WL 1786545, *2 (W.D.N.Y. Mar. 27, 2003); *Santos v. Hauck*, 242 F.Supp.2d 257 (W.D.N.Y. 2003) (collecting cases).

to respond within the required time, plaintiff may appeal his grievance to the CORC by filing a notice of decision to appeal with the IGP clerk. 7 N.Y.C.R.R. § 701.11(b)(6).

Defendants argue that they are entitled to summary judgment because plaintiff did not satisfy the exhaustion requirement that requires filing an appeal with the CORC. In support of their motion, defendants submitted the affirmation of Thomas G. Eagen, the Director of the Inmate Grievance Program for the Department of Correctional Services. Dkt. # 21. Eagen supervises the maintenance of grievance records and conducted a search of the CORC appeal records. According to Eagen, he found no "record or indication" that plaintiff filed any appeals from the denial of any grievances concerning Sgt. Morse identifying him as a snitch, the alleged attack on plaintiff by inmate Evans on October 29, 2001, or the fact that plaintiff was so frightened for his life that he choose to remain in his cell twenty-four hours a day. *Id.* at ¶¶ 6–7.

However, the record regarding the grievances filed by plaintiff is not so clear. There is no dispute that plaintiff wrote to Commissioner Goord on at least three occasions regarding his concerns about Superintendent McGinnis and Sgt. Morse, and that Deputy Commissioner Leclaire responded to plaintiff's allegations. The law regarding whether a plaintiff meets the PLRA's exhaustion requirement through informal channels is not well-settled. The Second Circuit has recently appointed counsel in a number of cases to address whether "inmates who did not fully comply with the dictates of New York law nonetheless exhausted their claims in other ways." *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir.2003); *see also Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir.2001) (noting that plaintiff fulfilled exhaustion

requirement by informally complaining to prison officials and successfully overturning a prohibition that later formed the basis for his federal court action).

Further, the record here shows that plaintiff filed Grievance No. 23039–02 on January 29, 2002, and fully exhausted his administrative remedies related to that grievance by appealing both to the Superintendent and to the CORC. According to Eagen, however, Grievance No. 23029–02 relates to plaintiff's claim that Morse retaliated against him in connection with a misbehavior report issued to inmate DePallo, not inmate Pickens. Therefore, Eagen argues, Grievance No. 23029–02 is unrelated to the claims in plaintiff's complaint.

Defendants did not file Grievance 23029–02 with the Court. However, the appeal to the Superintendent indicates that it could relate to the incident with Pickens, DePallo, or both Pickens and DePallo. The Superintendent's appeal states that a thorough investigation of the Grievance was conducted, that the allegation of extortion was found not to be true and that plaintiff and the other inmate were charged with an "unauthorized exchange." Dkt. # 21, Ex. C. The Superintendent further notes that Morse denied labeling plaintiff as a snitch. *Id.* The appeal to the CORC elaborates further and states that the:

> CORC believes that the grievant has not substantiated his claim that he has been the victim of harassment by staff nor has sufficient evidence been produced to support such a conclusion. CORC asserts that the employee's appropriate performance of his duties and enforcement of the rules and regulations should not be construed as harassment by the grievant.

Dkt. # 21, Ex. C.

Based on this record, I find that an issue of fact exists regarding whether

plaintiff sufficiently exhausted his administrative remedies regarding his claims against Morse and McGinnis related to inmate Pickens. Nevertheless, plaintiff's claims must be dismissed because plaintiff did not exhaust his administrative remedies at the appropriate time.

The law is clear that an inmate must exhaust his administrative remedies *prior* to bringing a § 1983 claim in federal court. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir.2001) *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("Subsequent exhaustion after suit is filed therefore is insufficient."); *Waters v. Sgt. Schneider*, No. 01 Civ. 5217, 2002 WL 727025 (S.D.N.Y. Apr. 23, 2002) (same). Here, plaintiff does not dispute that he filed his complaint on December 6, 2001, and then six weeks later filed Grievance No. 23039–02. Therefore, even assuming that Grievance No. 23039–02 was sufficiently related to plaintiff's claims here, he improperly exhausted those claims *after* commencing this action. *Neal*, 267 F.3d at 121–22 ("exhausting administrative remedies after a complaint is filed will not save a case from dismissal.").

Although the rule requiring dismissal at first glance may appear to be harsh, it must be applied here. The rationale underlying the PLRA's exhaustion requirement is based on the goals of resolving inmate grievances quickly, expeditiously remedying errors by prison officials, and streamlining and clarifying issues that may need to be decided in a subsequent federal court action. *Neal*, 267 F.3d at 122. To allow plaintiff to file his complaint and a motion for a temporary restraining order, and then exhaust his administrative remedies with prison officials would undermine the exhaustion requirement altogether. *Id.*

Accordingly, plaintiff's complaint against defendants Morse and McGinnis is dismissed without prejudice. Assuming that Grievance No. 23039–02 related to the claims against Morse and McGinnis, then plaintiff may refile his complaint, setting forth therein the steps he took to exhaust the precise claims raised in his complaint. If Grievance No. 23039–02 did not relate to the claims in plaintiff's complaint, then plaintiff is directed to file the necessary grievance with the IGRC on the appropriate form within 30 days of receiving this decision. Plaintiff will likely face expired administrative deadlines. Therefore, the Court directs that the IGRC Supervisor consider referral from this Court as a mitigating circumstance for any such untimely filing. *See* 7 N.Y.C.R.R. § 701.7(a)(1).

### IV. Claim Against Commissioner Goord

█ Plaintiff's third claim against Goord, however, is dismissed with prejudice. This Court may dismiss a claim with prejudice even though plaintiff may not have exhausted his administrative remedies where the claim clearly lacks merit. *See* 42 U.S.C. § 1997e(c)(2); *see also Mills v. Garvin*, No. 99 Civ. 6032, 2001 WL 286784, *3 (S.D.N.Y. Mar. 2, 2001). Plaintiff's claim against Goord is fatally flawed in two different ways.

In his claim against Goord, plaintiff alleges that, beginning in April of 2001, he and "several" congressional representatives sent letters to Goord concerning what plaintiff characterized as his "chronic protective custody status." Plaintiff asserts that he informed Goord that in almost every facility in which he was incarcerated, he had to be placed into protective custody and/or be transferred to a different facility for protective reasons. Plaintiff also claims that he requested that Goord transfer him into the custody of the Federal

Bureau of Prisons because he has been "[r]aped, robbed, and extorted" so frequently ever since his admission into the New York State Department of Correctional Services. Plaintiff alleges that Goord improperly denied his request, but he does not specify the resulting constitutional deprivation or the nature of the harm caused him because of that deprivation. Reading plaintiff's claim broadly, it appears he means to assert a § 1983 claim based on cruel and unusual punishment in violation of the Eighth Amendment.

Where, as here, plaintiff asserts an Eighth Amendment claim against a supervisory official, plaintiff must show that the supervisor had personal involvement in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir.2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d. Cir. 2001). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

Here, Goord argues that he is entitled to summary judgment because he lacked the requisite personal involvement in the alleged constitutional deprivation. He asserts in an affirmation that his office receives thousands of letters every year that are addressed to him from inmates or their families, and that he does not read them. He explained that one of his secretaries reads the letters and directs them to the appropriate Deputy or Associate Commissioners, depending on the particular issue raised by the inmate. Dkt. # 20, ¶ 4. That Deputy or Associate has the discretion to respond as necessary. *Id.* at ¶ 5. With respect to plaintiff's letters, Goord asserts that, prior to this lawsuit, he "had no personal knowledge of [plaintiff] and his claims regarding harassment at Southport Correctional Facility in 2001–2002." *Id.* at ¶ 9.

Plaintiff argues that Goord knew of the alleged violations through the letters he sent to him. Dkt. # 31, ¶ 2. The record contains three such letters. However, two were sent to Goord after he filed his complaint. Therefore, the only evidence in the record that Goord had any personal involvement in the claim asserted in the complaint is the August 1, 2001 letter in which plaintiff outlined his concern that he could not be safe at any of the DOCS facilities statewide. Goord's office responded that plaintiff should address his safety concerns with facility officials and his correction counselor.

"[T]he fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." *Thomas v. Coombe*, No. 95 Civ. 10342, 1998 WL 391143, *6 (S.D.N.Y. July 13, 1998) *citing Gayle v. Lucas*, No. 97 Civ. 0883, 1998 WL 148416 (S.D.N.Y. Mar. 30, 1998); *see also Higgins v. Coombe*, No. 95 Civ. 8696, 1997 WL 328623 (S.D.N.Y. June 16, 1997). Moreover, plaintiff cannot base liability solely on Goord's supervisory capacity or the fact that he held the highest position of authority in the Department of Correctional Services. *Id; see also Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996); *Al–Jundi v. Estate of Rockefeller*, 885 F.2d

1060, 1065 (2d Cir.1989); *Hernandez v. Artuz,* No. 94 Civ. 0212, 1996 WL 631707 (S.D.N.Y. Oct. 30, 1996).

The Court cannot find, and Goord has not cited, any cases to support his argument that he was not personally involved because he referred plaintiff's letter to another in his office for a response. The Court acknowledges that it makes little sense, and would expose Goord to immeasurable personal liability, if he could be personally accountable for any of the thousands of letters he receives each year alleging various constitutional violations. Equally unconvincing, however, is an argument that a supervisory official can escape § 1983 liability simply by referring repeated complaints from a single inmate alleging constitutional violations to others in his or her office for action. The Court need not address that issue, however, because the record here shows that plaintiff's claim is based on a single letter. In my view, the one letter to Goord is insufficient to show the personal involvement necessary to establish § 1983 liability. *Burgess v. Goord,* 98 Civ.2077, 1999 WL 33458, *5, (S.D.N.Y. Jan. 26, 1999); *see also Thomas,* 1998 WL 391143, at *6; *Higgins,* 1997 WL 328623, at *11.

In any event, even if the single letter could be sufficient for Goord to be personally involved in any constitutional violation, plaintiff cannot show that Goord in fact violated his constitutional rights. The Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *see also Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("Prison conditions may be restrictive and even harsh") (internal quotations and citations omitted). However, "gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective

any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer,* 511 U.S. at 833–34, 114 S.Ct. 1970 (internal quotations and citations omitted). In this regard, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates" and to protect them from the violent acts of other prisoners. *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 558 (1st Cir.1988); *Villante v. Dep't of Corr.,* 786 F.2d 516, 519 (2d Cir.1986).

Not every injury at the hands of a fellow inmate, however, will result in liability of a prison official. Rather, to prevail on an Eighth Amendment claim, a prisoner must prove both an objective and a subjective element. *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002). To establish the objective element, a prisoner must show that he was incarcerated "under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. Concerning the subjective element, the prisoner must show that the official actually knew of and deliberately disregarded an excessive risk to inmate safety. *Id.*

Put another way, to be liable "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. However, "an official's failure to alleviate a significant risk that he should have perceived but did not" will not serve as a basis for an Eighth Amendment violation. The subjective element must rise to the level of recklessness, not mere negligence. *Id.* at 838, 114 S.Ct. 1970.

Here, even assuming, *arguendo,* that plaintiff could prove the objective element,

and show that he was imprisoned under conditions that posed a substantial risk of serious harm, he cannot prove that Goord had the requisite level of intent to prevail on his claim. In response to plaintiff's August 1, 2001 letter, Goord advised plaintiff (through Deputy Commissioner Leclaire) that he should address his concerns with facility officials first, and with plaintiff's correction counselor. That act alone is not sufficient to show that Goord deliberately disregarded a serious risk to plaintiff's safety. At most, plaintiff's claim that Goord should have taken some other step, including transferring him from Southport into the Federal Bureau of Prisons, sounds in negligence, not recklessness. Therefore, plaintiff's Eighth Amendment claim against Goord must fail. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970; *Brock v. Wright,* 315 F.3d 158, 164 (2d Cir.2003) (affirming summary judgment to prison superintendent where, at most, record showed that he was negligent).

## CONCLUSION

Defendants' motion for summary judgment (Dkt.# 17) is granted. Plaintiff's first and second claims against defendants Gary P. Morse and Michael McGinnis are dismissed without prejudice. Plaintiff's third claim against defendant Glenn S. Goord is dismissed with prejudice.

IT IS SO ORDERED.