James R. HOUGHTON, Plaintiff,

v.

Joseph v. CARDONE, District Attorney, et al., Defendants.

No. 03–CV–6381L.

United States District Court, W.D. New York.

Dec. 2, 2003.

---

Louis P. Pilato, Rochester, NY, for Plaintiff.

Michael P. McClaren, Webster Szanyi, LLP, Buffalo, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, James R. Houghton, commenced this action in New York State Supreme Court, Orleans County, on July 22, 2003, asserting claims under both 42 U.S.C. § 1983 and state law. Defendants removed the action to this Court pursuant to 28 U.S.C. § 1331, on the basis of federal question jurisdiction. Defendants have moved to dismiss the complaint.

## BACKGROUND

The complaint (the factual allegations of which are taken as true for purposes of this Decision and Order) alleges that early in the evening of September 1, 2000, defendants Lieutenant Daniel Culver, Deputy Erin Fuller, and Deputy Ken Strickland ("the officers"), all of whom are employed by the Orleans County Sheriff's Department ("the Sheriff's Department"), arrived at plaintiff's home in Medina, New York, and told plaintiff that the Sheriff's Department had received a complaint about an open fire on plaintiff's property. Plaintiff denied any wrongdoing, and allowed the officers to inspect his property. The officers agreed that no violation was occurring. They then left, but warned plaintiff that they would be back if they received any more complaints.

At around 8:30 that night, the officers returned, stating that they had received another complaint about plaintiff from one of his neighbors. Plaintiff does not allege the nature of that complaint, but presumably it was again about an open fire on plaintiff's property. Plaintiff again denied that he had done anything wrong, and told the officers to leave. The officers then arrested plaintiff and placed him in their police vehicle. Plaintiff alleges that the officers used excessive force in arresting him and putting him in the vehicle.

Plaintiff was arraigned in town court on charges of second-degree assault, resisting arrest, obstructing governmental administration, and harassment. Plaintiff remained in jail for three days before he was able to post bail.

The complaint alleges, in short, that various communications took place between plaintiff's then-attorney and defendant Orleans County District Attorney Joseph V. Cardone, but that little of substance occurred for nineteen months, until April 30, 2002, when plaintiff received a notice from Cardone that the case had been presented to a grand jury, and that the grand jury

had returned a "no bill" dismissing all the charges.

In addition to the above-named defendants, plaintiff has sued the County of Orleans ("the County") and Orleans County Sheriff Merle Fredericks. The complaint sets forth five causes of action. The first alleges trespass and excessive force by the officers. The precise nature of the second cause of action is somewhat vague, but it appears to allege false arrest and false imprisonment, as well as defamation based on the allegation that defendants informed the local news media about plaintiff's arrest, with the result that a newspaper article was published about the arrest.

The third "cause of action" simply alleges that as a result of defendants' actions, plaintiff had to hire an attorney, and that he incurred legal fees. This does not appear, then, to be a separate claim so much as an allegation concerning plaintiff's damages.

The legal basis for the fourth cause of action is also unclear, although it could be read as asserting a claim for malicious prosecution. It alleges in part that Cardone "engaged in an improper and an unduly prolonged prosecution of the Plaintiff for over 600 days ...," and that as a result, "the Plaintiff was forced to continue his suffering, his indignity, his legal expenses, for more than 20 months." Complaint (Notice of Removal, Ex. A) ¶¶ 33, 34. The fifth cause of action alleges a claim under 42 U.S.C. §§ 1983 and 1988. Plaintiff seeks $2.5 million in damages.

## DISCUSSION

### I. Plaintiff's Federal Claims

### A. Compliance with Pleading Requirements

■ Defendants assert that plaintiff has failed to state a claim under § 1983, for a number of reasons. First, defendants contend that the allegations of the complaint are too vague and conclusory to state a claim.

■ It is true that "complaints alleging § 1983 violations 'must contain specific allegations of fact ....; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.'" *Humpherys v. Nager*, 962 F.Supp. 347 (E.D.N.Y.1997) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987)) (citations omitted). *See, e.g., Bliss v. Rochester City Sch. Dist.* 196 F.Supp.2d 314, 336 (W.D.N.Y. 2002) ("Because plaintiffs have offered nothing other than conclusory allegations, their claims premised upon § 1983 must be dismissed"). "As the Second Circuit has 'repeatedly held', complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Dewick v. Village of Penn Yan*, 972 F.Supp. 166, 169 (W.D.N.Y.1997) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987)). *See also Rodriguez v. Avita*, 871 F.2d 552, 554 (5th Cir.), *cert. denied*, 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989) ("In 'cases invoking 42 U.S.C. § 1983 we consistently require the claimant to state specific facts, not merely conclusory allegations'"); *Daniels v. City of Binghamton*, 947 F.Supp. 590, 596 (N.D.N.Y.1996) (although plaintiffs' allegations "may state a ... [constitutional] violation in form, they fail to do so in substance, since they 'consist[ ] of nothing more than naked assertions, and set[ ] forth no facts upon which a court could find a violation of ... Civil Rights ....'") (quoting *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (per curiam)).

Defendants contend that the § 1983 claim is insufficiently pleaded because it fails to identify which of plaintiff's consti-

tutional rights were violated, who violated them, or when they were violated. I agree that it is somewhat difficult to discern these matters. Nevertheless, although the Court need not construe the complaint as liberally as if plaintiff were appearing *pro se*, it is possible to glean the gist of at least some of plaintiff's claims. For instance, plaintiff alleges that the officers used excessive force when they arrested him. *See* Complaint ¶¶ 17, 18. The complaint also alleges that plaintiff was falsely arrested. *See* Complaint ¶¶ 7, 13. Likewise, the fourth cause of action, though pleaded in a rambling fashion, appears to allege that plaintiff was *maliciously prosecuted*.

Defendants point out that the complaint does not identify which defendant falsely arrested him, used excessive force, or committed the other alleged torts. The complaint appears to allege that the officers acted jointly, however, and that Cardone was responsible for plaintiff's prosecution. At any rate, under the Federal Rules, "a complaint need only meet the requirements of our 'simplified notice pleading standard [which] relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.'" *Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 213 (2d Cir.2003) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

I find that, at least with respect to the specificity of the claims, the complaint here meets the liberal notice-pleading standard. That does not mean, however, that the complaint states a *viable* claim. I find that most of plaintiff's federal claims must be dismissed for other reasons.

## B. Defamation Claim

■ Although, as stated above, it is difficult to tell exactly what claims plaintiff intends to assert, it appears that he is asserting a claim for defamation. The complaint alleges that defendants [1] "called the local media making it a point to report their confrontation with the Plaintiff which resulted in a newspaper article being written reflecting the Plaintiff's alleged misconduct and his arrest." Complaint ¶ 23. It also states that "[a]s a direct result of said conduct, the Plaintiff suffered the indignity of ... having his name publicized in the local press." Complaint ¶ 24.

It is debatable whether this even states a defamation claim under state law, since plaintiff does not expressly allege that defendants made a false statement about him; if all that defendants did was report the fact of plaintiff's arrest, and that he was *alleged* to have committed a crime, that would not be defamatory. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444, 749 N.Y.S.2d 456, 779 N.E.2d 167 (2002) ("Defamation is defined as a *false* statement that exposes a person to public contempt, ridicule, aversion or disgrace") (emphasis added).

Even if these allegations would suffice to make out a defamation claim under New York law, however, they are insufficient to state a claim under § 1983. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that damage to one's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause" so as to give rise to a § 1983 claim. *Id.* at 701, 96 S.Ct. 1155. Rather, the Court held, loss of reputation must be coupled

---

**1.** The complaint does not allege which defendants "called the local media," Complaint ¶ 23, but it appears that plaintiff is referring to the officers, since this allegation is contained in plaintiff's second cause of action, which relates to plaintiff's arraignment and other events occurring in the immediate aftermath of plaintiff's arrest.

with some other tangible element in order to rise to the level of a protectable liberty interest. *Id.* The Second Circuit has "interpreted this holding to mean that 'stigma plus' is required to establish a constitutional deprivation." *Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994) (citing *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989)).

█ Although the Second Circuit has observed that "it is not entirely clear what the 'plus' is," *Neu,* 869 F.2d at 667, no "plus" of any kind is alleged here. The general rule is that, in addition to alleging defamation, the plaintiff must allege that "the defamation occurred in the course of the termination of governmental employment or was coupled with a deprivation of a legal right or status." *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir.2002). Therefore, "the deleterious effects which flow directly from a sullied reputation would normally ... be insufficient. These would normally include the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation." *Valmonte,* 18 F.3d at 1001. *See also Pendleton v. City of Haverhill,* 156 F.3d 57, 63 (1st Cir.1998) (loss of private-sector job as result of alleged defamation by state actor does not amount to "stigma plus").

In the instant case, plaintiff alleges only that plaintiff suffered "indignity" as a consequence of the allegedly defamatory statements about him by defendants. Under the case law, that plainly does not meet the stigma-plus standard required for a § 1983 claim, and plaintiff's § 1983 claim based on his allegations of defamation is therefore dismissed.

**C. Claims Against Cardone**

█ All of plaintiff's claims, including his state law claims, against defendant

Cardone must be dismissed. First, to the extent that Cardone is being sued in his individual capacity, he is entitled to absolute prosecutorial immunity, which "cover[s] 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994). The only basis for the claims against Cardone relates to his actions in initiating and conducting the prosecution against plaintiff. Cardone is therefore absolutely immune from suit with respect to those claims. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 272–73, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Zahrey v. Coffey,* 221 F.3d 342, 346–47 (2d Cir.2000).

█ In addition, to the extent that Cardone is named in his official capacity, he is entitled to Eleventh Amendment immunity. "[I]n spite of the statutory classification a District Attorney is not an officer or employee of the municipality but is instead a quasi-judicial officer acting for the state in criminal matters." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 535–36 (1993) (quoting *Davis Construction Corp. v. County of Suffolk,* 112 Misc.2d 652, 447 N.Y.S.2d 355, *aff'd* 95 A.D.2d 819, 464 N.Y.S.2d 519 (2d Dep't 1983)) (citations omitted). Therefore, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir.1988), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989). Accordingly, Cardone is entitled to invoke Eleventh Amendment immunity as to plaintiff's claims against him in his official capacity. *Ying Jing Gan,* 996 F.2d at 536; *accord Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997); *Carbajal v.*

*County of Nassau,* 271 F.Supp.2d 415, 420 (E.D.N.Y.2003).

## D. Claims Against Fredericks in His Individual Capacity

 Defendants contend that the allegations in the complaint fail to show Sheriff Fredericks's personal involvement in the alleged constitutional violations. A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must show that the supervisor was personally involved in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 254 (2d Cir.2001); *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir. 1986). A "plaintiff cannot base liability solely on [the defendant]'s supervisory capacity or the fact that he held the highest position of authority" within the relevant governmental agency or department. *Burgess v. Morse,* 259 F.Supp.2d 240, 248 (W.D.N.Y.2003).

I find that the complaint fails to allege personal involvement by Fredericks in the alleged deprivations, and that plaintiff's § 1983 claims against him must therefore be dismissed. The complaint alleges that Fredericks: (1) failed to adequately train or supervise the officers; (2) knew about and tolerated the officers' allegedly unlawful behavior; and (3) "failed to institute a proper system of review and reprimand" of his deputies so as to prevent the types of unlawful acts alleged here. Complaint ¶¶ 6–8. Other than these conclusory allegations, however, there is no factual basis established to demonstrate Fredericks's personal involvement.

 Despite the aforementioned notice pleading standard, a civil rights complaint must still allege *facts. See Barren v. Harrington,* 152 F.3d 1193, 1194–95 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"), *cert. denied,* 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999); *see also Montero v. Travis,* 171 F.3d 757, 761–62 (2d Cir.1999) (claim against parole board chairman was properly dismissed as frivolous because plaintiff "never alleged any facts describing [chairman]'s personal involvement in the claimed constitutional violations") (2d Cir.1999); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice"). All that plaintiff has done here is assert the *conclusion* that Fredericks was personally involved, with no supporting factual allegations. That is not enough. If it were, supervisory officials would automatically be subject to suit (if not liability) every time one of their subordinates committed a constitutional violation. *See, e.g., Pollack v. Nash,* 58 F.Supp.2d 294, 300 (S.D.N.Y.1999) (allegation that defendant "permitted the establishment of certain customs which encourage, allow or suffer the prosecution of child abuse cases without sufficient evidence" "utterly fails to comport with the requirement that a civil rights complaint must contain 'more than mere conclusory allega-

tions,'" and "fails to satisfy the requirement that the defendant in a § 1983 action be personally involved in or actually caused a deprivation of a plaintiff's constitutional rights") (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988), and citing *Williams v. Smith,* 781 F.2d at 323, and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)); *Pravda v. City of Albany, N.Y.,* 956 F.Supp. 174, 182 (N.D.N.Y.1997) (conclusory allegations that defendants were responsible for supervising the officers involved in alleged mistreatment of plaintiff, and that they were responsible for setting county policy, were insufficient to establish their personal involvement in alleged constitutional deprivations); *cf. McGrath v. Scott,* 250 F.Supp.2d 1218, 1227–28 (D.Ariz.2003) (complaint adequately alleged personal involvement by supervisory officials where it alleged: specific instances of prior misconduct involving public safety officer; that each official knew of these prior instances of misconduct, yet failed to take sufficient action to prevent officer from using excessive force against plaintiff; provided details of investigation conducted under officials' direction into plaintiff's alleged assault by officer; and alleged that officials were deliberately indifferent to, or condoned, alleged violations).

### E. Claims Against County Defendants

▓▓▓ With respect to his claims against the County and Sheriff Fredericks in his official capacity [2] ("the County defendants"), plaintiff must allege that the alleged constitutional deprivations resulted from a municipal policy or custom. *See Board of the County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478–79, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Even in the absence of an "explicitly adopted rule or regulation," *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 870 (2d Cir.1992), a plaintiff may prove the existence of municipal policy if he can show that the unlawful act was done or approved by the person with final policy-making authority in the area in which the action was taken. *See Pembaur,* 475 U.S. at 480–81, 106 S.Ct. 1292. Where, however, liability is premised on the policymaker's approval of a subordinate's unlawful act, it must be shown that the policymaker ratified both the "subordinate's decision and the basis for it," *see City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), as municipalities cannot be liable on a theory of respondeat superior. *See Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *see also Brown,* 520 U.S. at 406–07, 117 S.Ct. 1382 ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably") (emphasis in original).

▓▓▓ Certain failures to act-such as failures to train or supervise subordinates-

---

**2.** Since "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent ...," *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), plaintiff's claims against Fredericks in his official capacity are in effect claims against the Sheriff's Department.

may evince municipal policy where municipal decisionmakers continue to adhere "to an approach that they know or should know has failed to prevent" constitutional violations. *Id.* at 407, 117 S.Ct. 1382; A plaintiff may prevail, however, only where the policymaker's decision "reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411, 117 S.Ct. 1382; *see Harris,* 489 U.S. at 388–92, 109 S.Ct. 1197; *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993); *see also Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991) ("evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges [that constitutional rights were being violated]" may demonstrate deliberate indifference).

Custom, on the other hand, may be the basis for municipal liability even where the practice "has not been formally approved by an appropriate decisionmaker," if "the relevant practice is so widespread as to have the force of law." *Brown,* 520 U.S. at 404, 117 S.Ct. 1382. Where unconstitutional conduct of subordinates is "permanent" and "well settled," *see Monell,* 436 U.S. at 691, 98 S.Ct. 2018, a municipality can be held liable because the practice is "so manifest as to imply the constructive acquiescence of senior policymaking officials." *Sorlucco,* 971 F.2d at 871.

Applying these principles to the case at bar, I find that plaintiff's allegations concerning the County defendants are insufficient, for much the same reasons that I have found insufficient allegations of Fredericks's personal involvement. The complaint contains only the most conclusory allegations that the county defendants knew about the officers' alleged misconduct, that they failed to properly supervise or train them, and so on. Not a single fact is alleged in support of those allegations, however. Even assuming, then, that Fredericks could be deemed a policymaker for the Sheriff's Department or the County, *see Jeffes v. Barnes,* 208 F.3d 49, 61 (2d Cir.) (concluding that sheriff was county's "final policymaking official" with respect to certain conduct of his staff members toward fellow officers), *cert. denied,* 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000), no policy or custom has been alleged here so as to make the County defendants potentially liable. *See Weeks v. New York State (Div. of Parole),* 273 F.3d 76, 82 (2d Cir. 2001) (though plaintiff alleged that she was discriminated against pursuant to defendant's "custom and policy" of discrimination, "such a conclusory allegation is wholly insufficient"); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (noting that "[t]he mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"); *Ricciuti,* 941 F.2d at 124 ("our prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory"); *Smith v. Metro North Commuter R.R.,* 2000 WL 1449865, at *10 (S.D.N.Y. Sept.29, 2000) ("a plaintiff's conclusory assertion that a municipality has such a policy or custom, or that it failed to train its employees, does not state a claim in the absence of some specific factual allegations tending to support the inference"). *See also Jones v. Nassau County Sheriff Dep't,* 285 F.Supp.2d 322, 326 (E.D.N.Y.2003) ("the complaint does not allege that the plaintiff suffered a constitutional harm due to a municipal policy or custom. Accordingly, the motion to dismiss the Section 1983 claim against the Sheriffs Department is granted"); *Hourihan v. Lafferty,* 58 F.Supp.2d 10, 13 (N.D.N.Y.1999) (plaintiff "has only made

conclusory allegations regarding violations of his rights, and has set forth no affidavits or evidence to make out a genuine issue of fact concerning any unconstitutional custom or policy for which the Sheriff's Department may be held liable. Accordingly, his claims against [the sheriff], in his official capacity, must be dismissed").

 In addition, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti,* 941 F.2d at 123) (citations omitted in original); *accord Dwares,* 985 F.2d at 100; *Powell v. Gardner,* 891 F.2d 1039, 1045 (2d Cir.1989). *See also Tuttle,* 471 U.S. at 823–24, 105 S.Ct. 2427 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker"); *Smith,* 2000 WL 1449865, at *9 ("an isolated act of excessive force by a single, non-policymak-ing municipal employee, standing alone, is usually insufficient evidence of municipal policy").[3]

## F. Claims Against the Officers

 As to plaintiff's claims against the officers, I find that they are adequate to survive a motion to dismiss. As stated, the complaint alleges that the officers falsely arrested plaintiff on September 1, 2000, and that in doing so they used excessive force. The complaint also alleges some additional facts surrounding the incident in question, such as the type of force used (*e.g.,* mace sprayed in plaintiff's eyes), and the charges against plaintiff. Bearing in mind that this is not a motion for summary judgment, I find these allegations to be sufficient to allow plaintiff's § 1983 claims against the officers to proceed at this stage.[4]

## II. Plaintiff's State Law Claims

### A. Timeliness

 Defendants contend that plaintiff's state law claims, other than the malicious

---

3. I note that in their memorandum of law, defendants assert that "it is well established that a County cannot be held liable under the doctrine of *respondeat superior* for the actions of its sheriff or sheriff's deputies." While it is true that *respondeat superior* cannot provide the basis for liability under § 1983, the cases cited by defendants in support of this proposition all predate the 1990 amendment of the New York State Constitution which *eliminated* a provision that had stated that a "county shall never be made responsible for the acts of the sheriff." *See Santiamagro v. County of Orange,* 226 A.D.2d 359, 359, 640 N.Y.S.2d 251 (2d Dep't 1996). At any rate, that provision was never a bar to an action under § 1983. *See Weber v. Dell,* 804 F.2d 796, 802–03 (2d Cir.1986) ("immunity from liability under section 1983 is not a question of state law but of federal law"; holding county liable for strip search policy implemented by its sheriff), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

4. Defendants devote a substantial portion of their briefs to their argument that plaintiff's state law claims are untimely, given New York's one-year limitations period for actions against a sheriff or sheriff's deputy. *See* C.P.L.R. § 215(1). Although defendants do not appear to contend that the federal claims are likewise time-barred, I note that § 215(1) does not apply to § 1983 actions, which in New York are governed by the three-year limitations period for personal injury actions under § 214(5). *See Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002), *cert. denied,* 538 U.S. 922, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003); *Taylor v. Mayone,* 626 F.2d 247, 253 (2d Cir. 1980) ("the appropriate statute of limitations for § 1983 actions against sheriffs and their deputies is the three-year provision of CPLR § 214(2) rather than the one-year provision of § 215(1)").

prosecution claim, are untimely because plaintiff failed to file a timely notice of claim. New York General Municipal Law § 50–i provides that "[n]o action . . . shall be prosecuted or maintained against a . . . county . . . for personal injury . . . alleged to have been sustained by reason of the negligence or wrongful act of such . . . county . . . or of any officer, agent or employee thereof, . . . unless . . . a notice of claim shall have been made and served upon the . . . county . . . in compliance with section fifty-e of this chapter." Section 50–e(1)(a) provides that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action . . . against a public corporation, . . . the notice of claim shall . . . be served . . . within ninety days after the claim arises."

Section 50–e(1)(b) also states that "[i]f an action or special proceeding is commenced against [an officer, appointee or employee of a public corporation], but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law." "A public corporation has a statutory obligation to indemnify if the officer, appointee or employee was acting within the scope of his or her employment in committing the alleged tortious acts." *Smith v. Scott*, 294 A.D.2d 11, 19, 740 N.Y.S.2d 425 (2d Dep't 2002).

Timely service of a notice of claim was therefore a condition precedent to plaintiff's filing of an action against the County defendants. In addition, there is no suggestion in the complaint that any of the individual defendants were acting outside the scope of their employment when they performed the acts in question, so the notice of claim requirement applies to them as well. *Id.*

The complaint alleges that a notice of claim was filed with the County on July 11, 2002. Complaint ¶ 11. Other than the malicious prosecution claim, all of plaintiff's causes of action arose in September 2000. They are therefore time-barred by plaintiff's tardy filing of a notice of claim. *See Benitez v. Board of Higher Educ. of City of New York–City Univ. of New York*, 308 A.D.2d 410, 410, 765 N.Y.S.2d 22 (1st Dep't 2003).

Defendants also contend that this action is barred by the applicable statutes of limitations. First, C.P.L.R. § 215(1) provides a one-year limitations period for "an action against a sheriff . . . upon a liability incurred by him by doing an action in his official capacity or by omission of an official duty . . . ." "The one-year limitation governing actions against a sheriff (CPLR 215[1]) applies equally to his deputies." *Kingston v. Erie County*, 122 A.D.2d 543, 544, 505 N.Y.S.2d 9 (4th Dep't 1986). A one-year limitations period also applies to defamation actions. C.P.L.R. § 215(3). In addition, Gen. Mun. L. § 50–i provides that, in addition to the notice of claim requirement, a tort claim against a county must be brought within one year and ninety days after the happening of the event upon which the claim is based.

Plaintiff commenced this action in state court in July 2003, over one year and ten months after the occurrence of the events upon which all of his claims (other than the malicious prosecution claim) are based. Those claims are therefore time-barred. .

In opposition to defendant's motion, plaintiff states that following the filing of plaintiff's notice of claim, defendants requested, and were given, a hearing under Gen. Mun. L. § 50–h, which provides that "[w]herever a notice of claim is filed against a . . . county, . . . the . . . county . . . shall have the right to demand an

examination of the claimant relative to the occurrence and extent of the injuries or damages for which claim is made ...." Plaintiff points out that during the 50–h proceeding, defendants never raised the notice-of-claim or limitations issue.

That does not preclude defendants from asserting these defenses now. Requesting a § 50–h hearing does not estop a defendant from later raising a limitations defense, absent fraud, misrepresentation, or deception on the part of the defendant that induced the plaintiff to refrain from timely commencing an action. *Ramirez v. New York City Sch. Constr. Auth.*, 229 A.D.2d 313, 314, 644 N.Y.S.2d 741 (1st Dep't 1996); *Balsamo v. Metropolitan Suburban Bus Auth.*, 211 A.D.2d 740, 740, 622 N.Y.S.2d 107 (2d Dep't 1995); *Pickens v. Capital District Transp. Auth.*, 209 A.D.2d 855, 856, 619 N.Y.S.2d 179 (3d Dep't 1994). There is no suggestion of any such behavior on defendants' part.

■ The only claim that might be timely here is the malicious prosecution claim, at least to the extent that it is asserted against the County (although from the complaint, it appears to be asserted only against Cardone). Plaintiff's malicious prosecution claim accrued when the criminal charges against him were terminated in his favor. *Nunez v. City of New York*, 307 A.D.2d 218, 219, 762 N.Y.S.2d 384 (1st Dep't 2003); *Scomello v. Caronia*, 232 A.D.2d 625, 625, 648 N.Y.S.2d 688 (2d Dep't 1996). A one-year limitations period applies to malicious prosecution claims. C.P.L.R. § 215(3).

The complaint alleges that plaintiff received notification from Cardone that the charges against him had been dismissed on April 30, 2002. The notice was dated April 24, 2002. Complaint ¶ 33. The complaint does not allege the date on which the dismissal occurred.

The complaint in this action was filed on July 22, 2003. Plaintiff's malicious prosecution claim is therefore time-barred as to Cardone. Assuming *arguendo* that § 50–i should be applied to this claim insofar as it is asserted against the County, however, plaintiff would have had one year and ninety days to file an action.

If the date of the notice from Cardone is used as the accrual date for plaintiff's malicious prosecution claim, he would have had until July 23, 2003 to file an action against the County, making this action timely.[5] The malicious prosecution claim would therefore be timely as to the County.

**B. Malicious Prosecution Claim Against County**

■ Plaintiff's malicious prosecution claim against the County must nonetheless be dismissed, as the County cannot be held liable. The complaint alleges that all of the relevant acts and omissions giving rise to this claim were taken (or should have been taken, in the case of the omissions) by Cardone in his prosecutorial role. The law in New York is clear, however, that a county cannot be held liable for such acts, for which the district attorney himself is immune from liability. *See Roche v. Village of Tarrytown*, 309 A.D.2d 842, 766 N.Y.S.2d 46, 47 (2d Dep't 2003) ("The Supreme Court ... properly awarded summary judgment to the defendant County, as it cannot be held liable for the alleged malicious prosecution by its District Attorney's office"); *Gala v. County of Livingston*, 174 A.D.2d 1048, 1048, 572 N.Y.S.2d 212 (4th Dep't 1991) ("The County is immune from liability for the acts of an assis-

5. Plaintiff's notice of claim, which was filed on July 11, 2002, was filed less than ninety days after the date of the notice from Cardone.

282

tant district attorney who, as here, has acted solely in a quasi-judicial capacity"); *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1154 n. 15 (2d Cir.1995) (noting case law suggesting that, because a district attorney represents the state, not the county, when prosecuting a criminal matter, "a plaintiff simply cannot state a § 1983 malicious prosecution claim against a New York county based upon the actions of district attorneys in bringing a prosecution") (citing *Walker,* 974 F.2d at 301, and *Baez,* 853 F.2d 73). This claim is therefore dismissed as well.

### CONCLUSION

Defendants' motion to dismiss the complaint (Docket # 3) is granted in part and denied in part. All of plaintiff's claims are dismissed, except for his fifth cause of action, under 42 U.S.C. § 1983, against defendants Lieutenant Daniel Culver, Deputy Erin Fuller, and Deputy Ken Strickland.

IT IS SO ORDERED.