06-3745-cv(L)
Turkmen, et al. v. Ashcroft, et al.

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: February 14, 2008      Decided: December 18, 2009)

Docket Nos. 06-3745-cv(L); 06-3785-cv(Con);
06-3789-cv(Con); 06-3800-cv(Con);
06-4187-cv(XAP)

- - - - - - - - - - - - - - - - - - - - - - -x

IBRAHIM TURKMEN, ASIF-UR-REHMAN SAFFI,
SYED AMJAD ALI JAFFRI, AKIL SACHDEVA,
SHAKIR BALOCH, HANY IBRAHIM, YASSER
EBRAHIM, ASHRAF IBRAHIM,

          <u>Plaintiffs-Appellees-Cross-
          Appellants</u>,

    - v.-

JOHN ASHCROFT, Former United States
Attorney General, DENNIS HASTY, Former
Warden of MDC, JAMES W. ZIGLAR,
Commissioner, Immigration and
Naturalization Service, JAMES SHERMAN,
ROBERT MUELLER,

          <u>Defendants-Appellants-
          Cross-Appellees</u>,

JOHN DOES 1-20, MDC Corrections Officers,
MICHAEL ZENK, Warden of MDC, CHRISTOPHER
WITSCHEL, CLEMETT SHACKS, BRIAN
RODRIGUEZ, JON OSTEEN, RAYMOND COTTON,
WILLIAM BECK, SALVATORE LOPRESTI, STEVEN
BARRERE, LINDSEY BLEDSOE, JOSEPH CUCITI,
HOWARD GUSSAK, MARCIAL MUNDO, DANIEL
ORTIZ, STUART PRAY, ELIZABETH TORRES,
PHILLIP BARNES, SYDNEY CHASE, MICHAEL

DEFRANCISCO, RICHARD DIAZ, KEVIN LOPEZ, MARIO MACHADO, MICHAEL MCCABE, RAYMOND MICKENS, SCOTT ROSEBERY, UNITED STATES,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - -x


        Before:          JACOBS, Chief Judge, and RAGGI, Circuit Judge.[*]


    Cross appeals from an order entered in the United States District Court for the Eastern District of New York (Gleeson, J.) granting in part and denying in part motions to dismiss made by certain defendants.  Plaintiffs plead a host of claims alleging abuse, mistreatment, and detention of Arab and Muslim aliens who were held on immigration violations in the wake of the terrorist attacks of September 11, 2001.  For the reasons that follow, we affirm the district court order insofar as it dismissed certain claims, and we vacate that order insofar as it denied the defendants' motions to dismiss certain remaining claims.

---

[*] The Honorable Sonia Sotomayor, originally a member of the panel, was elevated to the Supreme Court on August 8, 2009.  The two remaining members of the panel, who are in agreement, have determined the matter.  See 28 U.S.C. § 46(d); Local Rule 0.14(2); United States v. Desimone, 140 F.3d 457 (2d Cir. 1998).

MICHAEL WINGER, (C. William Phillips, Kate Greenwood, Amanda J. Gourdine, Kimberly Zelnick, Douglas Bloom, and Joanne Sum-Ping, on the brief), Covington & Burling LLP, New York, NY; RACHEL MEEROPOL (Matthew Strugar, William Goodman, Shayana Kadidal, and William Quigley, on the brief) Center for Constitutional Rights, New York, NY; DAVID COLE, Georgetown University Law Center, Washington, D.C.; and CLAUDIA SLOVINSKY, Law Offices of Claudia Slovinsky, New York, NY, for Plaintiffs-Appellees-Cross-Appellants.

ROBERT M. LOEB, (Peter D. Keisler, Assistant Attorney General, Gregory G. Garre, Deputy Solicitor General, Jonathan F. Cohn, Deputy Assistant Attorney General, Kannon K. Shanmugam, Assistant to the Solicitor General, Tony West, Assistant Attorney General, Barbara L. Herwig, Sarang V. Damle, Dennis C. Barghaan, Richard W. Sponseller, Larry Lee Gregg, and R. Craig Lawrence, Assistant United States Attorneys, on the brief) United States Department of Justice, Washington, D.C., United States Attorney's Office for the District of Columbia, Washington, D.C., and United States Attorney's Office for the Eastern District of Virginia, Alexandria, VA, for Defendants-Appellants-Cross-Appellees John Ashcroft and Robert Mueller.

WILLIAM ALDEN MCDANIEL, JR. (Bassel Bakhos, on the brief), Law Office of William Alden McDaniel, Jr., Baltimore, MD, for Defendant-Appellant-Cross-Appellee James Ziglar.

MICHAEL L. MARTINEZ (Shari Ross Lahlou, David E. Bell, Justin P. Murphy, Kyler E. Smar, and Matthew F. Scarlato, on the brief) Crowell & Moring LLP, Washington, D.C., for Defendant-Appellant-Cross-Appellee Dennis Hasty.

DEBRA L. ROTH (Thomas M. Sullivan, on the brief), Shaw, Bransford, Veilleux & Roth, P.C., Washington, D.C., for Defendant-Appellant-Cross-Appellee James Sherman.

SITAL KALANTRY, Cornell Law School, Ithaca, NY for amici curiae former wardens and senior prison officials in support of Plaintiffs-Appellees-Cross-Appellants.

PER CURIAM:

This putative class action was brought by seven named plaintiffs, all non-citizens who were detained on immigration violations following the terrorist attacks of September 11, 2001.[1]  The plaintiffs allege, inter alia,

_____

[1] An eighth named plaintiff, Syed Amjad Ali Jaffri, has withdrawn his claims.

4

that on account of their Arab or Muslim background (or perceived background), they were subjected to excessively prolonged detention, abused physically and verbally, subjected to arbitrary and abusive strip searches, and otherwise mistreated while in custody. Crucially, plaintiffs acknowledge that at the time they were detained they were present in the United States illegally, and were subject to removal. Their constitutional claims rest on (i) the conditions of their confinement, and (ii) the allegation that their detentions were illegally prolonged so that the Government could investigate any potential ties to terrorism.

Plaintiffs brought thirty-one separate claims against thirty-one identified defendants, including the United States, former Attorney General John Ashcroft, FBI Director Robert Mueller, and former Immigration and Naturalization Service ("INS") Commissioner James W. Ziglar, as well as Metropolitan Detention Center ("MDC") officials and correctional officers.

The United States, Ashcroft, Mueller, and Ziglar, as

well as four high-ranking MDC officials[2] (collectively, the "moving defendants") moved to dismiss certain claims on grounds that include qualified immunity and failure to state a claim.  At the risk of oversimplifying a complex ruling: the United States District Court for the Eastern District of New York (Gleeson, J.) denied the motions to dismiss claims concerning the conditions of confinement, but dismissed claims concerning the length of detention.  See Turkmen v. Ashcroft, No. 02 Civ. 2307(JG), 2006 WL 1662663, at *1 (E.D.N.Y. June 14, 2006).  Both sides appealed.

**I**

On November 2, 2009, plaintiffs moved for dismissal without prejudice of the pending appeals and cross-appeals in their entirety.  Plaintiffs argue principally that the appeals and cross-appeals are moot in light of a settlement recently reached with five named plaintiffs and plaintiffs'

---

[2] By consolidated motion, former MDC wardens Dennis Hasty and Michael Zenk joined the United States, Ashcroft, Mueller, and Ziglar in moving to dismiss.  The United States sought partial dismissal, and the five individual defendants sought dismissal of all claims brought against them.  MDC associate warden James Sherman separately moved to dismiss all claims brought against him, as did MDC unit manager Clemmet Shacks.

counsel's intent to seek leave in the district court to file a proposed Fourth Amended Complaint on behalf of the two remaining plaintiffs, other plaintiffs to be named, and the putative class. Ashcroft and Mueller oppose such a dismissal.

Plaintiffs argue that we should dismiss as moot the appeals related to the denial of the conditions of confinement claims, because the two remaining named plaintiffs (Ibrahim Turkmen and Akil Sachdeva) did not appeal the dismissal of claim 3 and never asserted claims 20-23. However, plaintiffs' counsel intends to preserve claims 3 and 20-23 as part of the putative class complaint by proposing to file a Fourth Amended Complaint adding five new named plaintiffs. Further, Ashcroft and Mueller argue that they appealed the district court's decision to deny the dismissal of claims 5 (in part), 7, and 8 (in addition to claims 3 and 20-23)--three claims that Turkmen and Sachdeva asserted along with the five settling plaintiffs. Plaintiffs indicate that the proposed Fourth Amended Complaint will not allege claim 8; however, claims 5 and 7 remain live (as does claim 8 pending its withdrawal). Moreover, defendants retain a strong interest in a decision

on their invocation of qualified immunity concerning claims that have been long pending and (as plaintiffs' counsel confirms) will be asserted in a new pleading. Finally, this is not the kind of case in which the class representative's interest abated during briefing or before oral argument; the settlement did not arise until long after the February 14, 2008 argument and the settling plaintiffs thus maintained a personal stake in pressing this appeal throughout.

Based on these circumstances and the district court's stay of the class certification motion, this Court is persuaded that the appeals related to the conditions of confinement claims are not moot. See Comer v. Cisneros, 37 F.3d 775, 799 (2d Cir. 1994) ("Where the claims of the named plaintiffs become moot prior to class certification, there are several ways in which mootness is not had."); see also Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980) ("To the extent that appellants' argument is that Swan's death does not moot the class claim if one of the proposed intervenors can be substituted as named plaintiff, we agree."); In re Nat'l Australia Bank Sec. Litig., No. 03 Civ. 6537(BSJ), 2006 WL 3844463, at *2 (S.D.N.Y. Nov. 8, 2006) (recognizing general rule that lack of class

8

representative renders class action moot, and exceptions to that rule where motion for class certification is pending or plaintiff did not have reasonable opportunity to move for class certification); id. at *3 (explaining that live controversy exists where new named plaintiff may be substituted or may intervene upon pre-certification mooting of class representative's claims).  Accordingly, we deny plaintiffs' motion to dismiss this appeal without prejudice on the ground of mootness.[3]

The appeals and cross-appeals are hereby dismissed only to the limited extent necessary to recognize the settlement of five named plaintiffs.  Despite this settlement and the proposed Fourth Amended Complaint, virtually all of the appeals and cross-appeals remain pending for our review

---

[3] Plaintiffs do not argue that their cross-appeals related to the length of detention claims are moot.  Any such argument would be untenable because the two remaining plaintiffs joined the settling plaintiffs in appealing the dismissal of claims 1, 2, and 5 (in part).  The district court also dismissed two additional claims, 24 and 25, which are related to the length of detention.  We do not reach claim 24 because it was asserted only by the settling plaintiffs (and not by the two remaining plaintiffs); the proposed Fourth Amended Complaint does not seek to preserve claim 24 through the proposed intervenor plaintiffs; and Ashcroft and Mueller concede that claim 24 is moot.  We do not reach claim 25 because no plaintiffs appealed the dismissal of this claim.

9

because (i) the two remaining plaintiffs asserted several of the claims underlying the moving defendants' appeals, and (ii) plaintiffs propose to file a Fourth Amended Complaint preserving for the putative class the claims asserted only by the settling plaintiffs through the addition of the proposed intervenor plaintiffs.

## II

We review de novo the grant or denial of a motion to dismiss a complaint. See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 235 (2d Cir. 2006). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III

We first consider defendants' challenge to the district court's order denying dismissal of claims related to the conditions of confinement--claims 3, 5 (in part), 7, 8, and 20-23.

The district court ruled on the defendants' motions to dismiss prior to the Supreme Court's decisions in Twombly and Iqbal.  It applied a standard of review under which it would not dismiss a claim "unless it appears beyond doubt . . . that the plaintiff can prove no set of facts which would entitle him to relief."  Turkmen, 2006 WL 1662663, at *24 (citing Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)).  Now, following the district court's decision, Twombly and Iqbal require "a heightened pleading standard in those contexts where factual amplification is needed to render a claim plausible."  Ross v. Bank of America, N.A. (USA), 524 F.3d 217, 225 (2d Cir. 2008) (internal quotation marks, citations, brackets, and emphasis omitted).  We could undertake to decide whether the challenged claims satisfy the pleading standard of Twombly and Iqbal; however, in the circumstances of this case--where plaintiffs have already announced their intent to file a Fourth Amended Complaint to preserve for the putative class

11

the claims asserted only by the settling plaintiffs--we think it better to vacate that portion of the district court's order denying dismissal of the conditions of confinement claims on the ground that an outdated pleading standard was applied, and to remand the case for further proceedings consistent with the standard articulated in Twombly and Iqbal.

It may be that the district court will grant plaintiffs leave to file the proposed Fourth Amended Complaint to satisfy the heightened pleading standard. See Fed. R. Civ. P. 15(a)(2) (providing that a court should "freely give leave when justice so requires"). We decline to consider whether plaintiffs should be allowed to replead yet again because, "[i]n the ordinary course, we are accustomed to reviewing a district court's decision whether to grant or deny leave to amend, rather than making that decision for ourselves in the first instance." Iqbal v. Ashcroft, 574 F.3d 820, 822 (2d Cir. 2009).

If the district court denies leave to file the proposed Fourth Amended Complaint, it should evaluate the sufficiency of the Third Amended Complaint in light of the settlement and the heightened pleading standard. The district court

12

can then address whether, under Twombly and Iqbal, the Third Amended Complaint fails to state a claim, or inadequately alleges the personal involvement of the moving defendants, or entitles the moving defendants to qualified immunity with respect to the conditions of confinement claims.

At this stage of proceedings, we do no more than vacate the order denying the motions to dismiss with respect to the conditions of confinement claims, and remand to the district court for further proceedings.

**IV**

The district court entered final judgment dismissing plaintiffs' length of detention claims as against all defendants for failure to state a claim. Plaintiffs challenge these dismissals.

The claims concerning length of detention allege generally that defendants detained plaintiffs longer than necessary to effect their removal (or voluntary departure) from the United States. Although plaintiffs acknowledge that they violated the immigration laws (for instance by overstaying their visas), they allege that the Government used these immigration violations "as a cover, as an excuse"

13

to investigate whether plaintiffs were tied to terrorism. Turkmen, 2006 WL 1662663, at *1. Plaintiffs maintain that their excessive detentions violated their Fourth and Fifth Amendment rights.[4]

**A. The Statutory Scheme**

By statute, aliens ordered removed shall be removed by the Attorney General within the 90-day "removal period." See 8 U.S.C. § 1231(a)(1)(A). The government is required to detain an alien ordered removed until removal is effected, at least for the removal period. Id. § 1231(a)(2).

By regulation, prior to the expiration of the removal period, the District Director or the Director of the Detention and Removal Field Office conducts a "custody review"--a review of an alien's record to determine whether detention is warranted after the removal period (if removal cannot be accomplished during the removal period). See 8 C.F.R. § 241.4(c)(1), (h), (k)(1)(i). Factors considered in this determination include a detainee's criminal conduct,

---

[4] Claim 1 alleged that a prolonged detention was an unreasonable seizure under the Fourth Amendment; Claim 2 that it was a violation of the Due Process Clause of the Fifth Amendment; and Claim 5 that it (along with other conduct) violated the equal protection guarantee of the Fifth Amendment.

14

mental health, ties to the United States, prior immigration violations and history, and the likelihood that the alien is a significant flight risk or a potential danger to the community. See 8 C.F.R. § 241.4(f). If an alien is further detained, the regulations require additional periodic custody reviews. See 8 C.F.R. § 241.4(k)(1)(ii), (k)(2). Notice of the records review component of the custody review must be provided to an alien so that he may submit information in support of his release. See 8 C.F.R. § 241.4(h)(2).

**B. Zadvydas**

In Zadvydas v. Davis, 533 U.S. 678 (2001), two aliens who had been ordered removed claimed that the length of their detention following the 90-day removal period violated their due process rights. The Government had been unable to remove the aliens because no country was willing to accept them. The Government argued that 8 U.S.C. § 1231(a)(6) authorizes indefinite post-removal-period detention. The Supreme Court concluded, however, that such a reading would render the statute unconstitutional in certain contexts under the Fifth Amendment's Due Process Clause, and held that "once removal is no longer reasonably foreseeable,

15

continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699.

In order to give appropriate leeway to the Executive Branch (based on its "immigration-related expertise" and "the serious administrative needs and concerns" associated with immigration enforcement), and "[i]n order to limit the occasions when courts will need to make" the difficult judgments required by recognizing such Executive leeway, Zadvydas accorded a presumption of reasonableness to six months' detention for an alien subject to an order of removal.[5] Id. at 700-01. Zadvydas indicated that,

---

[5] The seven named plaintiffs were detained for the following durations: Turkmen was detained for three months and 25 days from the date he accepted a voluntary departure order; Sachdeva was detained for three months and 17 days after he was ordered removed; Asif-Ur-Rehman Saffi was detained for four months and 18 days after he was ordered removed; Ashraf Ibrahim was detained for four months and 22 days after he was ordered removed; Hany Ibrahim was detained for six months and nine days after he was ordered removed; Yasser Ebrahim was detained for six months and 16 days after he was ordered removed; and Shakir Baloch was detained for six months and 27 days after he was ordered removed. Accordingly, Turkmen, Sachdeva, and two of the settling plaintiffs were detained for less than six months; and three of the settling plaintiffs were detained in excess of six months.

Turkmen's and Sachdeva's detentions were under six months, and thus were presumptively reasonable. However, our analysis proceeds to consider detentions in excess of six months because the proposed intervenor plaintiffs intend to assert claims 1, 2, and 5. See Comer v. Cisneros, 37

16

thereafter, the alien's continued detention would be deemed unlawful "if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing." Wang v. Ashcroft, 320 F.3d 130, 146 (2d Cir. 2003). Zadvydas thus "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights." Id.

**C. The District Court's Decision**

The district court, relying on Zadvydas and Wang, concluded that plaintiffs failed to state a claim because "the complaint does not allege that during the period of their detention there was no significant likelihood of removal in the reasonably foreseeable future." Turkmen,

---

F.3d 775, 799 (2d Cir. 1994) ("Where the claims of the named plaintiffs become moot prior to class certification, there are several ways in which mootness is not had."); see also Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980) ("To the extent that appellants' argument is that Swan's death does not moot the class claim if one of the proposed intervenors can be substituted as named plaintiff, we agree."); In re Nat'l Australia Bank Sec. Litig., No. 03 Civ. 6537(BSJ), 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006) (explaining that live controversy exists where new named plaintiff may be substituted or may intervene upon pre-certification mooting of class representative's claims).

17

2006 WL 1662663, at *39.  The complaint alleged simply that the detentions were "longer than necessary" to effectuate removal.  Id.  As the district court reasoned, recognizing such a claim as a violation of due process would "flood the courts with habeas petitions brought by aliens seeking to be removed as soon as they deemed it practicable."  Id. (emphasis added).  The district court explained that:

> [Plaintiffs] assume that all that is required for the Attorney General to secure removal is a deportation order and an airplane.  This assumption ignores legitimate foreign policy considerations and significant administrative burdens involved in enforcing immigration law in general, and, specifically, those concerns immediately following a terrorist attack perpetrated on the United States by non-citizens, some of whom had violated the terms of their visas at the time of the attack.

Id.

On appeal, plaintiffs argue that they were detained for a criminal investigation, and their detentions thus constituted separate seizures requiring their own justification and probable cause.  As plaintiffs see it, "the [district] court asked the wrong question.  The question is not *how long* could Plaintiffs be detained, but *for what reason*."  Plaintiffs-Appellees-Cross-Appellants' Br. at 20.  Plaintiffs further argue that their prolonged

18

detentions violated their rights to substantive due process, procedural due process, and equal protection.[6]

### D. Qualified Immunity

Plaintiffs assert that the Zadvydas standard identifies constitutional violations only "when removal is *impossible*"; they submit that it is inadequate to identify constitutional violations where, as alleged here, defendants employ "detention *as an alternative to removal*." Plaintiffs-Appellees-Cross-Appellants' Br. at 27. We disagree. In Whren v. United States, 517 U.S. 806, 813 (1996), the Supreme Court held that a law enforcement official's actual motivation for the Fourth Amendment seizure of a person is constitutionally irrelevant if the seizure is supported by probable cause. To the extent plaintiffs challenge their

---

[6] Plaintiffs also argue that Ebrahim and Turkmen were removed under 8 U.S.C. § 1227(a)(1)(B), thereby rendering inapplicable the 8 U.S.C. § 1231(a)(6) framework described in the text. Assuming arguendo that Ebrahim and Turkmen did not waive this argument by failing to raise it before the district court and failing to plead the relevant details, plaintiffs' argument overlooks (i) that an immigration judge found Ebrahim was a disappearance risk, and he thus fell under 8 U.S.C. § 1231(a)(6) (permitting further detention of an alien ordered removed "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal"), and (ii) that Turkmen declined to request bond after he accepted a voluntary departure order.

19

prolonged detention after final orders of removal (or voluntary departure) were entered against them, it is clear from the complaint that such detention was supported by the IJs' findings of removability, which constitute a good deal more than probable cause. Because plaintiffs were thus lawfully detained as aliens subject to orders of removal (or voluntary departure), they could not state a claim for unconstitutionally prolonged detention without pleading facts plausibly showing "no significant likelihood of removal in the reasonably foreseeable future." Wang, 320 F.3d at 146; see also Zadvydas, 533 U.S. at 699. In the absence of such a pleading, plaintiffs' challenge to their detention was properly dismissed under Federal Rule of Civil Procedure 12(b)(6). Moreover, we need not decide whether or under what circumstances aliens subject to removal (or voluntary departure) orders could state claims for unconstitutional detentions without satisfying Zadvydas. To the extent plaintiffs' claims are not based on Zadvydas, the moving defendants are entitled to qualified immunity. See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (concluding that two-step qualified immunity analysis set forth in Saucier v. Katz, 533 U.S. 194 (2001), is no longer

mandatory).

In light of the analysis above, plaintiffs can point to no authority clearly establishing a due process right to immediate or prompt removal (following an order of removal or voluntary departure).  Cf. Turkmen, 2006 WL 1662663, at *40.  The moving defendants therefore are entitled to qualified immunity with respect to claim 2.

Assuming arguendo that the Fourth Amendment applies to post-arrest detention, probable cause would be required only if the detentions at issue were not otherwise authorized.  For reasons stated above, the moving defendants had an objectively reasonable belief that the detentions were authorized, and therefore are entitled to qualified immunity with respect to claim 1.

Similarly, plaintiffs point to no authority clearly establishing an equal protection right to be free of selective enforcement of the immigration laws based on national origin, race, or religion at the time of plaintiffs' detentions.  See Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 490-91 (1999) ("What will be involved in deportation cases is not merely the disclosure of normal domestic law enforcement priorities and

21

techniques, but often the disclosure of foreign-policy objectives and (as in this case) foreign-intelligence products and techniques.  The Executive should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat--or indeed for simply wishing to antagonize a particular foreign country by focusing on that country's nationals--and even if it did disclose them a court would be ill equipped to determine their authenticity and utterly unable to assess their adequacy."); see also Zadvydas, 533 U.S. at 696 ("terrorism" might warrant "special arguments" for "heightened deference to the judgments of the political branches with respect to matters of national security"); Matthews v. Diaz, 426 U.S. 67, 81-82 (1976) ("The reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization."); but see Iqbal v. Hasty, 490 F.3d 143, 175 (2d Cir. 2007) (determining that Reno "does not stand for the proposition that the Government may subject members of a particular race, ethnicity, or religion to more restrictive conditions of confinement than members of other races, ethnic backgrounds, or religions"),

22

rev'd on other grounds and remanded, Iqbal, 129 S. Ct. at 1954. The moving defendants therefore are entitled to qualified immunity with respect to claim 5 (to the extent that claim 5 is based on the length of plaintiffs' detentions).

**CONCLUSION**

For the foregoing reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.