**Daniel H. NIELSEN, Plaintiff,**

v.

**CITY OF ROCHESTER, Chief of Police James Sheppard, Individually and in His Official Capacity, Officer Kent, Officers "John Doe 1–20" and other Members of the City of Rochester Police Department, in Their Individual and Official Capacities, Defendants.**

No. 11–CV–6196 EAW.

United States District Court, W.D. New York.

Signed Nov. 6, 2014.

Daniel H. Nielsen, Rochester, NY, pro se.

John M. Campolieto, City of Rochester, Rochester, NY, for Defendants.

## AMENDED DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### INTRODUCTION

Plaintiff Daniel Nielsen ("Plaintiff") brings this action against the City of Rochester, Chief of Police James Sheppard ("Sheppard"), Officer Kent ("Kent"), and Officers "John Doe 1–20" ("John Does 1–20") (collectively, "Defendants"), pursuant to 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments. (Dkt. 1). Presently before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkt. 19). For the following reasons, Defendants' motion for judgment on the pleadings is granted in part and denied in part. Defendants' motion is granted as to Plaintiff's claims against the City of Rochester and Defendant Sheppard, and as to Plaintiff's claims against Defendants Kent and John Does 1–20 in their official capacities. Defendants' motion is denied as to Plaintiff's 42 U.S.C. § 1983 claims for excessive use of force, malicious prosecution, false arrest, and false imprisonment, against Defendants Kent and John Does 1–20, in their individual capacities. Defendants' motion is granted as to Plaintiff's punitive damages claim against Defendants Kent and John Does 1–20 in their official capacities, but is denied as to these Defendants in their individual capacities.

### BACKGROUND

The statement of facts that follows is based on the allegations in Plaintiffs' complaint. Plaintiff alleges that he was ap-proached by a group of people in the back parking lot of the "Pita Pit," located in Rochester, New York, in Summer 2009. (Dkt. 1 at ¶ 12). This group of people included an individual named Mark Johnson, who, without provocation, allegedly punched Plaintiff in the face in front of a police officer. (Id. at ¶ 13). Plaintiff alleges that Mark Johnson was the friend of Tiffany Dimascio ("Dimascio"), whose father is a police officer for the City of Rochester. (Id. át ¶ 15). Plaintiff gave a statement to police officers present at the scene. (Id. at ¶ 14).

Thereafter, late in the evening of August 21, 2009, Plaintiff was acting as the designated driver for friends while visiting East Avenue and Alexander Streets. (Id. at ¶ 16). At around 1:30 a.m. on August 22, 2009, Plaintiff and his friends were walking down East Avenue when they were approached by Dimascio. (Id. at ¶ 17). Plaintiff alleges that Dimascio "ran up to [him] ... and began yelling obscenities at him for pressing charges against her friend, Mark Johnson," and also threatened to have Plaintiff assaulted by her friends. (Id. at ¶ 18). Plaintiff began walking away from Dimascio, but Dimascio and a growing group of people followed him. (Id. at ¶ 19).

Plaintiff alleges that Dimascio told the police that Plaintiff broke her cellphone. (Id. at ¶ 20). Plaintiff was subsequently surrounded by police officers, one of whom asked him if he broke Dimascio's cellphone, and another who said "arrest him." (Id. at ¶ 21).

Plaintiff was handcuffed by Defendant Kent and walked across East Avenue to a patrol car. (Id. at ¶ 22). Defendant Kent was allegedly "pulling at Plaintiff's arms," "deliberately tripping him," and "threw a punch to the right side of Plaintiff's face,

hitting him between his eyes and nose." (*Id.* at ¶ 23). Plaintiff further alleges that Defendant Kent then "threw [him] . . . to the ground while hand cuffed," and that a number of police officers "piled on" him. (*Id.* at ¶ 24). Plaintiff alleges that one officer placed his knee on the top of his head, and that he "felt his skull compressing to the concrete" and other officers "jumped on [his] . . . back and on his legs." (*Id.* at ¶ 25). An officer allegedly punched Plaintiff on either side of the head, while another officer kicked him in the ribs. (*Id.*). During the alleged beating, Plaintiff laid still on the ground because "he could not breathe with all the weight bearing down on his body." (*Id.* at ¶ 26).

Plaintiff further alleges that the officers tasered him in the back of his legs (*id.* at ¶ 27), and another officer asked if he "*'should use the mace'"* (*id.* at ¶ 28) (emphasis in original). Other police officers present at the scene allegedly failed to intervene, despite bystanders begging the police officers to stop the assault of Plaintiff. (*Id.* at ¶ 29). Plaintiff's friend, "Watson", allegedly tried to obtain a phone camera image of the assault, but he was threatened by an officer not to take the picture. (*Id.* at ¶ 30).

Plaintiff alleges that the police "'hog tied'" his legs and "threw him into the back of the patrol car," (*id.* at ¶ 31), and took him to the emergency room at Highland Hospital (*id.* at ¶ 32). While he was in the patrol car, Plaintiff alleges that he felt "dizzy" and had a "debilitating headache." (*Id.* at ¶ 33). Plaintiff told the officers that he had a concussion, and the officers allegedly told him to "'shut up,'" that he was "'lying,'" a "'good actor'" and that he was "'full of shit.'" (*Id.* at ¶¶ 34–35). When Plaintiff and the officers arrived at the hospital, Plaintiff had to "waddle" in, since his feet were tied together very tightly. (*Id.* at ¶ 36). Plain-

tiff further alleges that when he asked Defendant Kent to loosen his handcuffs because he could not feel his hands, Defendant Kent grabbed the handcuffs and "squeezed them as hard as he could." (*Id.* at ¶¶ 37–38). Plaintiff alleges that he was "dragged" into the hospital. (*Id.* at ¶ 39).

Plaintiff was given a bed in the emergency room. (*Id.* at ¶ 40). Plaintiff again asked Defendant Kent to loosen the handcuffs; Defendant Kent uncuffed Plaintiff's left hand and chained him to the bed, but did not loosen the right cuff. (*Id.* at ¶ 41). Plaintiff alleges that Defendant Kent also pulled on his leg constraints, while laughing and calling him a "'liar'" and a "'good actor,'" (*id.* at ¶ 42), and also told Plaintiff to "'piss in . . . [his] pants'" when he had to go to the bathroom (*id.* at ¶ 43). Plaintiff thereafter yelled for a nurse, who told the officers they had to allow Plaintiff to use the bathroom. (*Id.* at ¶ 44). Plaintiff alleges that he had to urinate in a bucket in front of the officers. (*Id.* at ¶¶ 45–46). After Plaintiff was done urinating, the officers strapped his legs back together and pulled the leg constraints "unreasonably tight." (*Id.* at ¶ 47).

Plaintiff was released into the officers' custody following a negative CT scan (*id.* at ¶ 48), and was handcuffed "as tight as before" and "dragged out of the hospital on his knees" (*id.* at ¶ 49). At the police station, Plaintiff allegedly was not given a nurse for at least 15 hours while he was incarcerated, and vomited twice from head trauma. (*Id.* at ¶ 50).

On December 16, 2009, a Grand Jury convened and indicted Plaintiff for the events occurring during his August 22, 2009 arrest. (*Id.* at ¶¶ 51–52). Plaintiff alleges that the indictment was "the product of fraud and perjury" and a failure to investigate the claims against him. (*Id.* at ¶ 52). Plaintiff also alleges that Defendant Kent did not have probable cause to arrest

him based on Dimascio's testimony because she was "a witness whose veracity was in grave doubt." (*Id.*). Plaintiff was arraigned on January 14, 2010, on the charges of criminal mischief in the fourth degree; obstructing governmental administration in the second degree; and harassment in the second degree. (*Id.* at ¶ 53). On September 28, 2010, the court dismissed the charges against Plaintiff with prejudice pursuant to CPL Section 160.50.[1] (*Id.* at ¶ 54).

## PROCEDURAL HISTORY

Plaintiff filed his complaint on April 15, 2011, alleging five causes of action: (1) 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments for excessive use of force; (2) supervisory violations of 42 U.S.C. § 1983; (3) *Monell* liability against the City of Rochester; (4) 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments for malicious prosecution, false arrest, and false imprisonment; and (5) punitive damages against Defendants Kent and John Does 1–20. (*Id.*). At the time of the filing of the complaint, Plaintiff was represented by Christina A. Agola, PLLC. (*Id.*).

On April 11, 2013, Defendants filed the instant motion for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkt. 19). Plaintiff filed response papers through his counsel on July 8, 2013. (Dkt. 24). On November 21, 2013, the Honorable William M. Skretny, Chief Judge, United States District Court, granted attorney Christina A. Agola's motion to withdraw in light of her suspension. (Dkt. 25). The case was transferred to the undersigned on February 21, 2014, without any decision having been rendered on the pending motion. (Dkt. 26).

1. N.Y.Crim. Proc. § 160.50 provides for an "[o]rder upon termination of criminal action

## DISCUSSION

### I. Legal Standard

Judgment on the pleadings may be granted under Fed.R.Civ.P. 12(c) "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999); *see also Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010) ("The same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed. R.Civ.P. 12(c) motions for judgment on the pleadings.").

To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

A plaintiff must provide the grounds of his entitlement to relief through "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

in favor of the accused."

555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

## II. Plaintiffs 50–h Transcript

As a threshold matter, the Court notes that Defendants attach and rely, in part, upon the transcript of a 50–h hearing held pursuant to § 50–h of the New York General Municipal Law in support of their motion for judgment on the pleadings. (Dkt. 19–5). "As with Rule 12(b)(6) motions, Rule 12(c) motions generally are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings." *Byrd v. City of New York*, No. 04–1396–cv, 2005 WL 1349876, at *1, 2005 U.S.App. LEXIS 10820, at *2–3 (2d Cir. June 8, 2005); *see also* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Generally speaking, a transcript from a 50–h hearing will be considered outside the four corners of the complaint. *See Aguilera v. Cnty. of Nassau*, 425 F.Supp.2d 320, 323 (E.D.N.Y. 2006) (declining to consider 50–h transcript that was not attached to or incorporated by reference into the complaint); *Lozada v. City of New York*, No. 12 Civ. 0038(ILG)(JMA), 2013 WL 3934998, at *1 n. 2, 2013 U.S. Dist. LEXIS 105682, at *2–3 n. 2 (E.D.N.Y. July 29, 2013) (declining to consider 50–h transcript on defendant's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c)); *Fontanez v.*

*Skepple*, No. 12–CIV–1582 (ER), 2013 WL 842600, at *2–3, 2013 U.S. Dist. LEXIS 31720, at *6–7 (S.D.N.Y. Mar. 6, 2013) (declining to consider 50–h testimony upon which only defendant relied), *aff'd*, 563 Fed.Appx. 847 (2d Cir.2014); *Peone v. Cnty. of Ontario*, No. 12–CV06012 CJS, 2013 WL 775358, at *1, 2013 U.S. Dist. LEXIS 27698, at *2 (W.D.N.Y. Feb. 28, 2013) ("In general, the Court would not consider a 50–h hearing transcript on a 12(b)(6) motion.").

Defendants advance no argument as to why it would be proper for the Court to consider Plaintiff's 50–h transcript on their motion for judgment on the pleadings. The 50–h transcript is not attached as an exhibit to the complaint, and there is no indication that Plaintiff relied on the 50–h hearing transcript in drafting his complaint. Furthermore, Plaintiff does not rely on the 50–h transcript in his opposition to Defendants' motion for judgment on the pleadings. Accordingly, the Court declines to consider the 50–h transcript and confines its analysis to the facts alleged by Plaintiff in his complaint.

## III. Plaintiff's 42 U.S.C. § 1983 Claims

### A. Claims Against Defendants Sheppard and John Does 1–20

Defendants argue that all of Plaintiff's claims against Defendants Sheppard and John Does 1–20 must be dismissed because Plaintiff fails to make any allegations against them. (Dkt. 19–2 at 3).

#### 1. Plaintiff's Allegations Against Defendant Sheppard

██ A supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986); *see Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003) ("[S]upervisor liability in a § 1983 action

depends on a showing of some personal responsibility, and cannot rest on respondeat superior.") (internal quotations and citations omitted); *Bennings v. Kearney*, 2 Fed.Appx. 218, 220 (2d Cir.2001) ("A viable § 1983 suit based on supervisory liability requires personal involvement by the defendant-supervisor.") (citing *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995)). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. There are many ways in which a supervisory official may be deemed to have been personally involved in a constitutional violation:

A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Williams*, 781 F.2d at 323–24 (internal citations omitted). However, a " 'plaintiff cannot base liability solely on [the defendant]'s supervisory capacity or the fact that he held the highest position of authority' within the relevant governmental agency or department." *Houghton v. Cardone*, 295 F.Supp.2d 268, 276 (W.D.N.Y.2003) (quoting *Burgess v. Morse*, 259 F.Supp.2d 240, 248 (W.D.N.Y.2003)).

■ "[T]he conclusory assertion that a supervisory official was personally involved in the deprivation of constitutional rights, without supporting factual allegations, is not sufficient to state a claim under § 1983." *Roberites v. Huff*, No. 11–CV–521Sc, 2012 WL 1113479, at *6, 2012 U.S.

Dist. LEXIS 46206, at *21 (W.D.N.Y. Mar. 30, 2012); *see also Montero v. Travis*, 171 F.3d 757, 761–62 (2d Cir.1999) (claim against parole board chairman was "properly dismissed as frivolous because [the plaintiff] . . . never alleged any facts describing [chairman's] . . . personal involvement in the claimed constitutional violations."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); *Houghton*, 295 F.Supp.2d at 276 ("All that plaintiff has done here is assert the *conclusion* that [the supervisory official] . . . was personally involved, with no supporting factual allegations. That is not enough.") (emphasis in original); *Pollack v. Nash*, 58 F.Supp.2d 294, 300 (S.D.N.Y. 1999) (allegation that defendant " 'permitted the establishment of certain customs which encourage, allow or suffer the prosecution of child abuse cases without sufficient evidence,' " "utterly fails to comport with the requirement that a civil rights complaint must contain 'more than mere conclusory allegations,' " and "fails to satisfy the requirement that the defendant in a § 1983 action be personally involved in or actually caused a deprivation of a plaintiff's constitutional rights."); *Pravda v. City of Albany*, 956 F.Supp. 174, 182 (N.D.N.Y.1997) (conclusory allegations that defendants "were responsible for supervising the officers involved in alleged mistreatment [of plaintiff], and that they were responsible for setting County policy," were insufficient to establish their personal involvement in the alleged constitutional deprivations).

■ Plaintiffs complaint contains the following allegations against Defendant Sheppard:

(1) Chief of Police James Sheppard was the final policymaker for the City of

Rochester Police Department. (Dkt. 1 at ¶ 1);

(2) Chief Sheppard is and was "the final policymaker for the City of Rochester Police Department, and the training and supervision of officers, including the defendant Officer Kent and Officers John Doe 1–20." (*Id.* at ¶ 10);

(3) Chief Sheppard was the "final policymaker," and "had a custom, policy, or pattern and practice of failing to adequately investigate leads, to withhold material exculpatory and impeachment evidence from prosecutors and to expose subjects of arrest to excessive force." (*Id.* at ¶ 55); and

(4) City of Rochester policymakers have been made aware of cases involving unlawful practices of police officers and investigators, and have done nothing to rectify the illegal investigative practices of its police officers, and their propensity to assault innocent citizens for no reason, including Defendants Kent and John Does 1–20. (*Id.* at ¶ 56).

Plaintiff's complaint does not make any specific allegations regarding Chief Sheppard's custom of failing to investigate leads, withholding material from prosecutors, or exposing subjects of arrest to excessive force. Plaintiff's allegations regarding Defendant Sheppard's personal involvement are conclusory, and he has merely recited the legal standard required for imposing supervisory liability, without providing any supporting factual allegations. As explained by the United States Supreme Court in *Twombly*, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127

S.Ct. 1955 (internal quotations and citations omitted); *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."). As a result, Plaintiff's claims against Defendant Sheppard are dismissed.

### 2. Plaintiff's Allegations Against John Does 1–20

Defendants' assertion that Plaintiff does not make any allegations against John Does 1–20 is inaccurate, because Plaintiff's complaint plainly alleges violations against officers other than Defendant Kent. For example, Plaintiff alleges that on August 22, 2009, "there were other officers ... standing around in a circle watching, while bystanders were begging them to stop, but failed to intervene and protect the Plaintiff from this gratuitous assault." (Dkt. 1 at ¶ 29). Plaintiff also alleges that "a number of police officers" piled on him, compressed his skull into the concrete, jumped on his legs, punched him in the head, and kicked him in his ribs (*id.* at ¶¶ 24–25), and that officers other than Defendant Kent accompanied Plaintiff to the hospital (*id.* at ¶¶ 36, 44, 47–48). It can be inferred from the complaint that John Does 1–20 are those officers who allegedly were present at the scene of the arrest and failed to intervene to prevent the alleged assault of Plaintiff, the officers who participated in the alleged assault of Plaintiff, and the officers other than Defendant Kent who accompanied Plaintiff to the hospital. *See Simpson v. Owner of Dollar Tree Store*, No. 09–6162, 2010 WL 3364200, at *6, 2010 U.S. Dist. LEXIS 88027, at *16 (E.D.Pa. Aug. 24, 2010) (where plaintiff alleged that a named defendant and another police officer arrested him without a warrant, court assumed that the unnamed police officer was the "John Doe Officer" named in plaintiff's complaint); *Smart v. Taylor*,

No. 05–1777(NLH), 2008 WL 755904, at *2 n. 6, 2008 U.S. Dist. LEXIS 21607, at *7 n. 6 (Dist.N.J., Mar. 19, 2008) ("We assume for purposes of this Opinion that John Doe is the CCCF Officer that performed the strip search on plaintiff."); *Escudero v. Oliver*, No. 03 Civ. 6630(NRB), 2004 WL 1320604, at *1, 2004 U.S. Dist. LEXIS 10761, at *2 (S.D.N.Y. June 14, 2004) ("Plaintiff does not identify the officer he claims was responsible for his injuries, although the Court assumes this officer is the John Doe defendant."). Plaintiff's complaint contains a footnote reserving his right to properly name the "John Does 1–20" when he obtains that information. (Dkt. 1 at 1 n. 1). Therefore, the Court declines to dismiss Plaintiff's claim against John Does 1–20 on the basis that Plaintiff has failed to make any allegations against them.[2]

### B. Constitutional Claims Against the Officers in Their Official Capacities

Defendants argue that Plaintiff's claims against the individual officer Defendants in their official capacities must be dismissed because claims against a government employee are treated as claims against the municipality. (Dkt. 19–2 at 4). In his responding papers, Plaintiff concedes that his claims against Defendants in their official capacities should be dismissed. (Dkt. 24 at 19).

■ "[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir.2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471–73, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)); *see also 5 Borough Pawn, LLC v. City of New York*, 640 F.Supp.2d 268, 297 (S.D.N.Y. 2009) ("A suit for damages against a municipal officer in their official capacity is the equivalent of a damage suit against the municipality itself.") (internal quotations and citation omitted). Accordingly, Plaintiffs claims against the individual Defendants in their official capacities are dismissed.

### C. *Monell* Liability

■ Plaintiff's third cause of action is for *Monell* liability against the City of Rochester. (Dkt. 1 at ¶¶ 74–80). Defendants argue that Plaintiff's *Monell* claim fails to state a claim against the City of Rochester because Plaintiff's allegations against the City are conclusory. (Dkt. 19–2 at 5–10).

2. "Courts typically refrain from dismissing suits against 'John Doe' defendants 'until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials'...." *Kearse v. Lincoln Hosp.*, No. 07 Civ. 4730(PAC)(JCF), 2009 WL 1706554, at *2, 2009 U.S. Dist. LEXIS 52895, at *4 (S.D.N.Y. June 17, 2009) (quoting *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir.1998)). However, Plaintiff must identify the John Doe individuals prior to the three-year statute of limitations period, or those Defendants will be dismissed. *Tapia–Ortiz v. Doe*, 171 F.3d 150, 151–52 (2d Cir.1999) ("[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued."); *Cuellar v. Love*, No. 11–cv–3632 (NSR), 2014 WL 1486458, at *5, 2014 U.S. Dist. LEXIS 51622, at *14 (S.D.N.Y. Apr. 11, 2014) ("Claims under 42 U.S.C. § 1983 asserted in New York based on personal injuries, such as Plaintiff's claims premised on excessive force, are subject to a three-year statute of limitations."). Plaintiff's claims against the John Doe Defendants may be barred by the three-year statute of limitations for 42 U.S.C. § 1983 claims because the events alleged in the complaint occurred between August 22, 2009 and September 28, 2010. (Dkt. 1). However, because Defendants fail to address this argument in their motion, the Court declines to dismiss the John Doe defendants at this time.

 "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir.2008) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). In order to maintain a 42 U.S.C. § 1983 action against a municipal defendant, a plaintiff must identify a municipal "policy or custom" from which the alleged injury arose. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 Fed. Appx. 543, 545 (2d Cir.2009) (quoting *Vives v. City of New York*, 524 F.3d 346, 350 (2d Cir.2008)).

 It is well-settled that a plaintiff's conclusory allegations, which merely recite the elements for stating a *Monell* claim, are insufficient to state a claim for municipal liability. *See Genovese v. Town of Southhampton*, 921 F.Supp.2d 8, 25 (E.D.N.Y.2013) ("[V]ague and conclusory assertions that the Town should have known that officers would encounter these situations, and that the Town did not adequately train officers to properly respond ... without any actual supporting [allegations] ..., are insufficient to adequately plead a *Monell* claim."); *Murray v. Admin. for Children's Servs.*, 476 F.Supp.2d 436, 442 (S.D.N.Y.2007), *aff'd*, 293 Fed. Appx. 831 (2d Cir.2008) ("The Amended Complaint does not allege other similar instances of malicious prosecution that

could raise an inference that the City maintains a policy or custom of deliberate indifference to these types of constitutional deprivations."); *Worrell v. City of New York*, No. 12–CV–6151 (MKB), 2014 WL 1224257, at *12, 2014 U.S. Dist. LEXIS 39794, at *41 (E.D.N.Y. Mar. 24, 2014) (a "single incident of Plaintiff's allegedly negligent investigation is not sufficient to impose municipal liability· without additional allegations from which this Court may infer that it was caused by a practice so widespread as to practically have the force of law."); *Weaver v. City of New York*, 13–cv–20 (CBA)(SMG), 2014 WL 950041, at *7, 2014 U.S. Dist. LEXIS 32036, at *21 (E.D.N.Y. Mar. 11, 2014) (allegations that "'[i]t is widely understood that the NYPD has engaged in, and continues to engage in, an unlawful policy of arresting both victim and perpetrator in certain domestic violence disputes' and that the 'customs, policies, usages, practices, procedures, and rules of the NYPD included ... arresting citizens without probable cause and then committing perjury and/or manufacturing evidence and/or engaging in falsification in an effort convict such individuals,'" were "vague and conclusory assertions" and "not sufficient to state a claim of municipal liability under *Monell*."); *Fierro v. N.Y.C. Dep't of Educ.*, 994 F.Supp.2d 581, 589 (S.D.N.Y.2014) (granting motion to dismiss *Monell* claim because allegations that "it was the DOE's official custom or practice to discriminate or retaliate against disabled employees," and "discriminatory practices were so persistent and widespread that even if they were not the official custom or practice of the DOE, they constitute the constructive acquiescence of the policymakers," were conclusory); *Irish v. City of New York*, No. 09 Civ. 5568(RMB), 2010 WL 5065896, at *5, 2010 U.S. Dist. LEXIS 130466, at *14 (S.D.N.Y. Dec. 6, 2010) ("Plaintiffs speculative and conclusory allegations of an unlawful cus-

tom and practice are insufficient to support a claim of municipality liability based upon *Monell* ...."); *see also Giaccio v. City of New York*, 308 Fed.Appx. 470, 472 (2d Cir.2009) (affirming summary judgment in favor of defendants dismissing *Monell* claim where plaintiff identified, "at most, only four examples" of constitutional violations, because "[t]his evidence falls far short of establishing a practice that is so persistent and widespread as to justify the imposition of municipal liability.") (internal quotations omitted).

Plaintiff alleges that the City of Rochester:

(1) Employed Defendants Kent and John Does 1–20, and is and was responsible for the policies, practices, and customs of the City of Rochester Police Department (Dkt. 1 at ¶ 9);

(2) Had a custom, policy, or pattern and practice of failing to adequately investigate leads, withholding exculpatory and impeachment evidence from prosecutors, and exposing subjects of arrest to excessive force (*id.* at ¶ 55);

(3) Had knowledge of but did nothing to rectify the illegal investigative practices of its police officers, and their propensity to assault innocent citizens for no reason, including Defendants Kent and John Does 1–20 (*id.* at ¶ 56);

(4) Had a custom, policy or practice of "failing to adequately train, supervise, or discipline officers concerning basic investigation techniques ... pressuring witnesses to make false identifications, falsifying inculpatory evidence, [disclosing] exculpatory and impeachment material to the prosecution, and [refraining] from exposing innocent parties from excessive undue physical force from police officers" (*id.* at ¶ 57);

(5) Took no steps or grossly inadequate steps to train, supervise, or discipline Defendants Kent and John Does 1–20, despite actual or constructive notice of their behavior (*id.* at ¶ 58; *see also* ¶¶ 68–70, 72); and,

(6) Should have known that its failure to properly train or supervise officers, adopt proper policies, and failure to investigate, would result in the deprivation of Plaintiff's rights (*id.* at ¶ 75).

Plaintiff's allegations fail to state a claim for *Monell* liability against the City because his allegations are conclusory, and he fails to support them with facts in his complaint. Plaintiff makes conclusory allegations about a policy, practice, or custom, but he provides no factual detail to support these allegations. Plaintiff alleges that this policy is evidenced by the City's "failure to take remedial action concerning prior abuses of police authority by Officer Kent and John Doe Officers 1–20, and/or defendant City of Rochester's failure to properly investigate prior similar incidents, and/or the reckless disregard or gross indifference by defendant City of Rochester for the gross negligence of these officers...." (*Id.* at ¶ 76). However, Plaintiff concedes that he is unaware of prior similar incidents involving Defendants Kent and John Does 1–20 (*id.* at ¶ 69), and he does not allege any other incident where police officers abused an arrest victim and the City of Rochester failed to take any action.

Plaintiff's allegations with regard to his *Monell* claim are conclusory and fail to state a claim. *See Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir.2011) (dismissing Plaintiff's *Monell* claims because "the complaint does not allege facts sufficient to show that 'the violation of ... [the plaintiff's] constitutional rights resulted

from a municipal custom or policy.'") (citation omitted). In short, "[p]laintiff's complaint is light on facts and heavy on conclusory language," and merely "recites the legal elements rather than alleging any additional facts." *Grantley v. City of New York*, No. 12 Civ. 8294(KBF), 2013 WL 6139688, at \*3, 2013 U.S. Dist. LEXIS 165800, at \*8–9 (S.D.N.Y. Nov. 21, 2013). "Not only does plaintiff allege facts related to a single incident, which is insufficient to establish *Monell* liability, but the allegations in the complaint are the kind of boilerplate allegations that are not entitled to a presumption of truth on a Rule 12(b)(6) motion to dismiss." *Id.* at \*3, 2013 U.S. Dist. LEXIS 165800, at \*9. Accordingly, Plaintiff's § 1983 claim against the City of Rochester is dismissed.

### D. 42 U.S.C. § 1983 Causes of Action for Excessive Use of Force, Malicious Prosecution, False Arrest and False Imprisonment

Defendants argue that Plaintiff's complaint must be dismissed as to all the individual Defendants because "the Complaint is devoid of any allegations of any personal involvement of Kent, Sheppard, or 'John Does 1–20' nor does it allege they were directly and personally responsible for the purported unlawful conduct." (Dkt. 19–2 at 9).

Defendants offer no further argument as to why the Constitutional violations alleged by Plaintiff should be dismissed. As to Defendants Kent and John Does 1–20, De-

fendants' statement that the complaint contains no allegations of their personal involvement is inaccurate. Plaintiff makes several allegations against Defendants Kent and John Does 1–20 indicating that they were personally involved in the alleged violations of Plaintiffs constitutional rights. (*See* Dkt. 1 at ¶¶ 21–50). For example, Plaintiff alleges that Defendant Kent arrested, punched, tripped, and threw Plaintiff to the ground. (*Id.* at ¶¶ 22–24). Plaintiff also alleges that "a number of police officers" piled on him, compressed his skull into the concrete, jumped on his legs, punched him in the head, and kicked him in his ribs. (*Id.* at ¶¶ 24–25). Plaintiff further alleges that several officers failed to intervene to stop the alleged assault (*id.* at ¶ 29), and that police officers, including Defendant Kent, brought him to the police station and incarcerated him (*id.* at ¶¶ 49–50). Finally, Plaintiff alleges that the officer defendants withheld and misrepresented to prosecutors and the grand jury exculpatory facts, failed to investigate the claims against Plaintiff, and created fake claims, in order to conceal that Plaintiff had been assaulted "for no reason." (*Id.* at ¶ 83).[3]

Defendants offer no substantive argument as to why Plaintiff's excessive use of force, malicious prosecution, false arrest, and false imprisonment claims against Defendants Kent and John Does 1–20 should be dismissed. It is not this Court's responsibility to raise and make counsel's arguments for them. *Murray v. Coleman*, No. 08–CV–6383L, 2014 WL 2993748, at

---

**3.** Plaintiff's malicious prosecution claim may be barred by the fact that Plaintiff was indicted by a grand jury. (Dkt. 1 at ¶¶ 51–52). It is well-established that a grand jury indictment creates a presumption of probable cause. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003). A plaintiff may rebut this presumption "only … by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police con-

duct undertaken in bad faith.'" *Id.* at 72–72 (quoting *Colon v. New York*, 60 N.Y.2d 78, 83, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)). Because Defendants do not raise this argument in their papers, the Court declines to dismiss Plaintiff's malicious prosecution claim at this time. However, the fact that Plaintiff was indicted may have some bearing on his malicious prosecution claim at some point in the future.

*7, 2014 U.S. Dist. LEXIS 90884, at *17–18. (W.D.N.Y. July 2, 2014). Therefore, the Court declines to dismiss Plaintiff's 42 U.S.C. § 1983 claims for excessive use of force, malicious prosecution, false arrest, and false imprisonment against Defendants Kent and John Does 1–20 in their individual capacities.

## IV. Punitive Damages

 Plaintiff's fifth and final cause of action purports to be against Defendants Kent and John Does 1–20 for punitive damages. (Dkt. 1 at ¶¶ 88–90). As an initial matter, "punitive damages are a remedy and not a separate cause of action." *Eldridge v. Rochester City Sch. Dist.*, 968 F.Supp.2d 546, 563 (W.D.N.Y. 2013).

As discussed at Point III(B), Plaintiff's claims against the Defendants in their official capacities are dismissed. Plaintiff is therefore unable to collect punitive damages against the officers in their official capacities.

Punitive damages are available against an official in his individual capacity. *New Windsor Volunteer Ambulance Corps., Inc. v. Meyers*, 442 F.3d 101, 122 (2d Cir.2006) (immunity from punitive damages "does not extend to a municipal official sued in his individual capacity"). Defendants have only argued for dismissal of Plaintiffs punitive damages claim against the officers in their official capacities. Therefore, Defendants' motion in this respect is denied as to Defendants Kent and John Does 1–20 in their individual capacities.

### CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted in part and denied in part. Defendants' motion is granted as to Plaintiff's claims against the City of Rochester and Defendant Sheppard, and as to Plaintiff's claims against Defendants Kent and John Does 1–20 in their official capacities. Defendants' motion is denied as to Plaintiff's 42 U.S.C. § 1983 claims for excessive use of force, malicious prosecution, false arrest, and false imprisonment, against Defendants Kent and John Does 1–20, in their individual capacities. Defendants' motion is granted as to Plaintiff's punitive damages claim against Defendants Kent and John Does 1–20 in their official capacities, but is denied as to these Defendants in their individual capacities. As a result, Plaintiff's first cause of action for excessive use of force, his fourth cause of action for malicious prosecution, false arrest, and false imprisonment, and his request for punitive damages against Defendants Kent and John Does 1–20 in their individual capacities remain.

SO ORDERED.